## Lancaster Theological Seminary Tax Exemption Case.

Argued September 13, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Carl G. Herr,* for appellant.

*T. Roberts Appel, II,* with him *Appel, Ranck, Herr & Appel,* for appellee.

OPINION BY HOFFMAN, J., November 11, 1965:

The Lancaster County Board for the Assessment and Revision of Taxes [Board] appeals from the order of the lower court directing it to exempt from local taxation certain real estate owned by The Lancaster Theological Seminary of the United Church of Christ [Seminary].

The appeal involves the application of §204 of The General County Assessment Law to three dwelling houses owned by the Seminary and occupied rent-free by professors and their families. This section provides: "The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit: . . . (c) All . . . seminaries . . . and institutions of learning, benevolence, or charity . . . with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded,

14

endowed, and maintained by public or private charity. . . ." Act of May 22, 1933, P. L. 853, art. II, §204, as amended, 72 P.S. §5020-204.

The parties have stipulated that appellee is a "seminary" and an "institution of learning" which is "founded, endowed, and maintained by public charity." Accordingly, the only issue to be decided is whether the professors' homes are "necessary for the occupancy and enjoyment" of the exempt institution. The lower court found that the professors' homes are necessary, because they are ". . . a component part of the overall plan and practice of instruction of the students of the Seminary." The Board urges, however, that the use of the Seminary-owned homes is not necessary to further the educational objectives of the institution.

In our opinion, the Board incorrectly interpreted the term "necessary." Our courts have held that "necessary" means not "absolute necessity," but rather "reasonable necessity," embracing the idea of convenience and usefulness for the purposes intended. _Barnes Foundation v. Keely_, 314 Pa. 112, 118, 171 A. 267, 269 (1934) ; _County of Lancaster v. Y.W.C.A. of Lancaster_, 92 Pa. Superior Ct. 514, 518 (1928). The Supreme Court of Pennsylvania has specifically stated that the "real nub" of a controversy involving these tax exemption provisions ". . . is the use to which the residence . . . is put." _University of Pittsburgh Tax Exemption Case_, 407 Pa. 416, 422, 180 A. 2d 760, 762 (1962).

This principle was applied in the _University of Pittsburgh_ case, supra, in determining the tax exempt status of the chancellor's residence. The property was owned by the university and located approximately 2 1/2 miles from the campus. The chancellor used his home for receiving and entertaining student organizations, faculty members, alumni, and other guests of the university. In the eye of the public, he represented

the "image" of the university. The Court held that the residence qualified for tax exempt status, since ". . . the majority of the events for which the residence was utilized . . . bore a direct relationship to the proper functioning of the University of Pittsburgh and served its aims and objectives." *University of Pittsburgh Tax Exemption Case,* supra, 407 Pa. at p. 424.

Institutionally-owned residences for administrators and faculty have been similarly declared tax exempt in earlier cases. In *County of Northampton v. Lafayette College,* 128 Pa. 132, 18 A. 516 (1889), the Supreme Court held that professors' homes on campus which were owned by the educational institution were tax exempt. Our own Court stated: "Universities, colleges, academies, schools and institutions of learning which come within the statutory classification, are held exempt from taxation . . .; and this exemption extends not only to quarters used for employees and for dormitories and dining halls used for the students but also to buildings owned by the institution and used by it to house the president and faculty. [citing cases]." *Parmentier Trustees' Appeal,* 139 Pa. Superior Ct. 27, 33, 11 A. 2d 690, 693 (1940). Finally, in *White v. Smith,* 189 Pa. 222, 42 A. 125 (1899), a convent used as a residence for teachers in a parochial school was held to be tax exempt.

We conclude, therefore, that institutionally-owned professors' homes are exempt from local taxation if the use of the properties is an integral part of the educational functions and objectives of the institution.

It is true that the professors' homes in the instant case are not located on campus. As the *University of Pittsburgh* case clearly indicates, however, at page 420, the location of the property does not control its tax status unless this factor affects its usefulness to the institution. The exemption may apply even though the building is not annexed or contiguous to the col-

lege grounds.[1] The campus of the modern educational institution is constantly expanding. Consequently, its boundary lines cannot be traced with precision. It would be unreasonable to deny tax exempt status to buildings which are part of the institution and used for its educational purposes simply because they are separated from the main campus by only a city street.

Bearing in mind the above principles, we turn to the facts in the instant case. The President and professors of the Seminary, who have the burden of proving that the properties in question come within the exemption provisions, testified that the houses are used for entertaining students, alumni and guests. Often the professors meet in their homes with students and their wives to advise and counsel them. Classes, seminars and meetings are conducted in these homes to encourage a more personal and informal relationship between student and teacher.

More importantly, the homes in the instant case serve as living classrooms for the Seminary students who will soon assume their positions in various communities and perform the duties of religious leaders. One professor testified: ". . . I have classes in the house for the seminary because of my own particular teaching, I am teaching church administration, and many of these men when they go out, will have to use their homes. That, I try to demonstrate, I use my home for them so that the house becomes a demonstration." The professors' homes, therefore, provide the arena for practical observation in a manner similar to the clinic of a medical school or the moot courtroom of a law

---

[1] The Court stated in the *Barnes Foundation* case, supra, 314 Pa. at pp. 123-124; "We therefore hold that a charitable institution may have buildings and grounds geographically separated from each other, but united in their common usefulness and purpose into one plant, the operation of which is devoted to the ends contemplated by the statute; and all are tax exempt."

school. Since a minister can cope with many of the personal problems with which he is confronted only in the more intimate confines of his own home, this training is of the utmost importance for him. In light of the nature of the institution and its course of instruction, we conclude, in accordance with the lower court, that the professors' homes fall within the statutory requirements as interpreted by our Supreme Court.[2] We, therefore, affirm the order of the lower court directing the Board to exempt the real estate from taxation.

Order affirmed.

WATKINS, J., dissents.

---

[2] We recognize that the already broad tax exemption provisions have an adverse effect on the financial position of a county. Each year an increasing amount of real estate qualifies for such tax exempt status. While the costs of government are continually rising, an important source of revenue is being severely limited. In the County of Philadelphia, for example, recent studies show that almost 24% of the total assessed value of real estate is now exempt from local taxation. In time, counties may find that they are unable to sustain themselves financially in the face of a diminishing number of taxable properties. An added burden is necessarily placed on the other inhabitants of the county. Certainly. this problem deserves the careful attention of our Legislature.