## Overmont Corporation *v.* Board of Revision of Taxes, Appellant.

Argued April 7, 1976, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*James M. Penny, Jr.,* Assistant City Solicitor, with him *Claudia Kaputsin,* Assistant City Solicitor, *Raymond Kitty,* Deputy in charge of Litigation, *Stephen*

*Arinson,* Chief Deputy City Solicitor, and *Sheldon L. Albert,* City Solicitor, for appellant.

*Norman ˙ Perlberger,* with him *Martin Howard Katz,* and, of counsel, *Blank, Rome, Klaus & Comisky,* for appellee.

OPINION BY JUDGE MENCER, June 15, 1976:

The Board of Tax Revision of the City of Philadelphia (Board) determined that the appellee, Overmont Corporation (Overmont), was liable for real estate taxes for the years 1973 and 1974 on approximately 1.13 acres of land it owned in the City of Philadelphia. The Court of Common Pleas of Philadelphia County, after consolidating Overmont's appeals from those assessments, reversed the Board's determinations by an order dated December 24, 1974. The Board's exceptions to the lower court's order were dismissed on April 2, 1975, and the Board appealed to this Court.

The question presented by the Board's appeal is, we believe, one of first impression. We are asked to decide whether, as a matter of law, vacant land previously owned by one charitable institution loses its exemption from real estate taxes when it is transferred to a second nonprofit charitable corporation which intends to erect a building on the land to be used for charitable purposes. The period for which real estate taxes were assessed is the period during which the building was under construction.

The land in question here had previously been owned by Philadelphia College of Osteopathic Medicine (PCOM) which had been granted a charitable exemption from real estate taxes on the entire tract of which this land was a part. PCOM desired to build a residence facility for senior citizens on the land, which would qualify for 100 percent financing from

the Federal Department of Housing and Urban Development (HUD). For reasons of expediency, a separate corporation, incorporated in Delaware and known as Overmont Corporation, was formed to apply for HUD financing. Overmont was also supposed to administer and manage the construction and operation of the proposed facility.

By a deed dated September 8, 1972, PCOM transferred the land to Overmont for a consideration of $246,000. Shortly thereafter, construction of the senior citizens' apartments began. Construction was completed on May 31, 1974, at which time Overmont took possession from the contractor. The Board claims that during the period of construction Overmont was not entitled to an exemption as a charitable institution, notwithstanding the earlier exemption granted to PCOM on the same land. We agree with the Board and reverse the order of the court below.

## Effect of Transfer

The applicable law is The General County Assessment Law (Act),[1] which provides for tax exemptions for charitable uses in Section 204(a)(3) and (9), 72 P.S. §5020-204(a)(3), (9):

"(a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

. . . .

"(3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue de-

---

[1] Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-101 et seq.

rived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose;

. . . .

"(9)   All real property owned by one or more institutions of purely public charity, used and occupied partly by such owner or owners and partly by other institutions of purely public charity, and necessary for the occupancy and enjoyment of such institutions so using it. . . ."

Section 204 implements the power granted in Article VIII, Section 2(a)(v) of the Pennsylvania Constitution:

"(a)   The General Assembly may by law exempt from taxation:

. . . .

"(v)   Institutions of purely public charity, but in the case of any real property tax exemptions *only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.*" (Emphasis added.)

It is clear from the constitutional grant, Section 204, and the case law that whether an exemption for charitable purposes is proper depends on whether the land is actually used for the purposes of the institution seeking the exemption. *University of Pittsburgh Tax Exemption Case,* 407 Pa. 416, 180 A.2d 760 (1962); *Board of Revision of Taxes of Philadelphia v. United Fund of the Philadelphia Area,* 11 Pa. Commonwealth Ct. 201, 314 A.2d 530 (1973).

Once PCOM transferred the land at issue here, it could no longer be said that the land was being used for PCOM's purposes.  Therefore, the land in Overmont's hands held the same nonexempt status it would have held regardless of the transferor's identity.  It

then became necessary for Overmont to qualify for an exemption if it was able. In order to so qualify, Overmont bore the burden of bringing itself within the ambit of the exemption. *Four Freedoms House of Philadelphia, Inc. v. Philadelphia,* 443 Pa. 215, 279 A.2d 155 (1971). That burden is not lessened for a claimant seeking a charitable exemption. *University of Pittsburgh Tax Exemption Case, supra.*

Period of Construction

In *Dougherty v. City of Philadelphia,* 112 Pa. Superior Ct. 570, 172 A. 177 (1934), a parochial school which constructed a building partially on land it previously owned and partially on land purchased from a transferor who did not qualify for a charitable exemption was held not entitled to an exemption during the period of construction for the land it purchased. In the case at bar, as we have stated, PCOM's charitable exemption ended with its use. The Superior Court stated in *Dougherty* that ''ownership and use must be present to justify an exemption and . . . the construction of a building intended for a use that would be within the terms of the exempting statute was not yet such use.'' 112 Pa. Superior Ct. at 575, 172 A. at 179. Applying this rule, we find that Overmont's building and land during the period of construction were not yet a use qualifying for a charitable exemption. Overmont, however, relies on that portion of *Dougherty* which states: ''Where real estate has acquired a definite character disclosing a devotion to and a use and occupation for a purpose entitling the owner to exemption, such character is not changed by the doing of things ordinarily essential to its use for the charitable purpose.'' 112 Pa. Superior Ct. at 577, 172 A. at 180. This rule, as applied in *Dougherty,* related only to that land already exempt *and in the possession of the original holder of the exemption* and is thus not applicable to the land in question here.

The court below, in allowing the exemption in this case, seemed to rely on the fact that Overmont was created by PCOM and was in large measure controlled by it. We find, however, no authority for concluding that Overmont and PCOM should be considered one entity for tax exemption purposes. This is especially true in view of the $246,000 consideration paid by Overmont to PCOM for the land. Indeed, the law does not favor disregarding corporate separateness for the purpose of granting tax exemptions. *See, e.g., Commonwealth of Pennsylvania v. Weldon Pajamas, Inc.,* 432 Pa. 481, 248 A.2d 204 (1968) ; *Shelburne Sportswear, Inc. v. Philadelphia,* 422 Pa. 199, 220 A.2d 798 (1966).

We are likewise unpersuaded by the fact that Overmont at all times intended the facility then under construction to be used for charitable purposes. This alone does not entitle Overmont to a charitable exemption during the period of construction. *Mullen v. Commissioners of Erie County,* 85 Pa. 288 (1877).[2] As land only, and independent of its use, the land in question here comes strictly within the taxing laws until it is actually used for charitable purposes. *Philadelphia v. Jewish Hospital Assn.,* 148 Pa. 454, 23 A. 1135 (1892) ; *Dougherty, supra.*

The fact that Overmont received an exemption as a charitable institution when the building was completed is consistent with the cases cited above. The property was admittedly exempt from taxation at all times except during the period of construction. There is nothing anomalous in this result, however, since where

---

[2] Apparently in response to the *Mullen* case, the legislature passed the Act of June 4, 1879 (No. 104), which exempted from taxation buildings under construction intended for charitable use. That Act was specifically repealed by the Act of May 22, 1933, P.L. 853, Section 601(35), 72 P.S. §5020-601, thus returning the law at this time to the rule as enunciated in *Mullen, supra.*

the *use* of property determines whether a charitable exemption will be granted, it follows that no property is eternally imprinted with such an exemption.

Order reversed.

Judge KRAMER did not participate in the decision in this case.