Lutheran Social Services, Adams County, Pennsylvania *v.* Adams County Board for Assessment and Revision of Taxes, Appellant.

Argued June 9, 1976, before President Judge BowMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER and BLATT. Judges KRAMER and ROGERS did not participate.

*H. Thomas Pyle,* with him *Pyle and Phillips,* for appellant.

*Michael J. Brilliant,* with him *Robert H. Griffith,* and *Markowitz, Kagen & Griffith,* for appellee.

582

OPINION BY JUDGE BLATT, October 18, 1976:

Real estate taxes were assessed in 1973 on certain properties owned by the Lutheran Social Services in Straban Township, Adams County, Pennsylvania, and the Adams County Board for Assessment and Revision of Taxes (Board) appeals here from an order of the Court of Common Pleas of Adams County which sustained an appeal of the said Lutheran Social Services from the Board's denial of an exemption.

The Lutheran Social Services were incorporated as a Pennsylvania nonprofit corporation in 1965 as a result of the merger of the Lutheran Inner Mission and the Lutheran Welfare Service. The merger articles provided that the purposes of the surviving corporation were to provide a spiritual-social ministry and to supplement existing welfare services for older people, families, and children. The membership consists primarily of Lutheran ministers and lay persons living in the area of south-central Pennsylvania.

The Lutheran Social Services operate a Home for the Aged (Home) in Gettysburg, Pennsylvania, providing nursing services and residential care for individuals over 65 years of age. The real estate assessments at issue here relate to five dwelling houses or cottages constructed on the campus of the Home and used as part of an independent living program which the Home conducts. The sole question here is whether or not these five cottages are devoted to the charitable purposes of the Home and are thereby entitled to share in its tax exemption.

The cottage program here concerned is said to be designed to provide an aging individual, or couple, or group of individuals, with independent living and security in a Christian community where supportive services are available for them. The cottages are, in effect, small dwellings occupied by individuals (cottagers) who have qualified for the program, and

for whom the Home agrees to perform all of the routine maintenance functions necessary to keep the cottage buildings in good repair. All of the normal housekeeping expenses, however, including food and utilities, must be assumed by the cottagers. Upon admission, all cottagers are eligible to participate in all of the normal programs at the Home, and they qualify for the cottage program by signing a residence agreement, by supplying a notarized financial statement, and by paying a substantial admission fee.

The question of entitlement to an exemption is a mixed one of law and fact, *City of Harrisburg v. Presbyterian Apartments, Inc.,* 18 Pa. Commonwealth Ct. 428, 337 A.2d 297 (1975), and absent any abuse of discretion or a lack of supporting evidence the decision of the trial judge is binding on this Court. *Township of Derry, Dauphin County v. Shwartz,* 21 Pa. Commonwealth Ct. 587, 346 A.2d 853 (1975). The evidence presented at the hearing in the court below by the Lutheran Social Services consisted of the testimony of its Executive Director and various exhibits, including copies of the cottage residence agreements, and, although there are some inconsistencies in these agreements, the evidence supports the lower court's conclusion that the fees paid by the cottagers are admission fees for the total program offered and that the cottagers, therefore, share in the Home's tax exemption.

Article VIII, §2(a)(v) of the Pennsylvania Constitution provides:

"(a) The General Assembly may by law exempt from taxation:

. . . .

"(v) Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which

is actually and regularly used for the purposes of the institution."

For Adams County, The Fourth to Eighth Class County Assessment Law,[1] is the controlling statute implementing this power, and it provides in §202 (a)(3), 72 P.S. §5453.202(a)(3):

"(a) The following property shall be exempt from all county, borough, town, township, road, poor, county institution district and school (except in cities) tax, to wit:

. . . .

"(3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity: . . . Provided further, That the property of associations and institutions of benevolence or charity be necessary to and actually used for the principal purposes of the institution and shall not be used in such a manner as to compete with commercial enterprise."

Clearly, this constitutional grant, §202(a), the implementing statutory provision cited, and the case law here indicate that whether or not an exemption for charitable purposes is proper depends upon whether or not the property is actually used for the purposes of the institution seeking the exemption. *University of Pittsburgh Tax Exemption Case*, 407 Pa. 416, 180 A.2d 760 (1962); *Overmont Corporation v. Board of Revision of Taxes*, 25 Pa. Commonwealth Ct. 173, 360 A.2d 302 (1976). And it is equally clear that there is no difference here between a resident of the Home's

---

[1] Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. §5453.102 et seq.

main building and a cottage resident with respect to the services available and the underlying obligation of the Home to support the individual concerned in either setting should that become necessary.

In *Lutheran Home at Topton, Pennsylvania Tax Appeal*, 6 Pa. Commonwealth Ct. 199, 293 A.2d 888 (1972), where there was a cottage program similar to the one conducted here, we held that the cottages used in the Topton program were not devoted to the charitable purposes of the home there, and were consequently not entitled to an exemption from real estate taxes. The facts in this case, however, can be distinguished from those in *Topton* and dictate a different result. We concluded in *Topton* that the residents of the cottages had purchased all that they were receiving on a *quid pro quo* basis. The admission fee to the program there was equal to the construction cost of the cottage alone and was not dependent upon the number of individual occupants in a cottage. Moreover, the residence agreement there provided that the individual cottage occupants could reside in the cottages for only so long as they were physically and financially able to care for and support themselves, and that, if they should leave the cottages for any reason, they were entitled as a matter of right to neither a refund of any part of their admission fee nor to care in any of the other facilities maintained by the home. In short, the program in *Topton* was neither conceived of nor administered as an integral part of the charitable purposes of the home.

The critical difference in the Lutheran Social Services program as contrasted with the *Topton* program is that each cottager here is entitled to all of the services offered by the Home once the admission fee is paid, regardless of whether or not he or she can pay for any or all of the additional services which may be later required. The residence agreement here

provides that an individual may remain in the cottage as long as he or she is physically and mentally able to care for himself or herself, and there is no provision that the cottage must be vacated if or when the individual's financial resources should become exhausted. The Executive Director of Lutheran Social Services testified that once an individual entered the Home community, either as a resident of the main building or as a cottager, he would be supported by the Home indefinitely, even if his resources should become depleted. Specifically, the Director stated that, if a cottager should become impoverished, he would still be permitted to remain in the cottage and would be subsidized to whatever extent thereafter necessary by the Home. The Lutheran Social Services' program obligates itself here to admit the cottager to residential and nursing services in the main building when and as that becomes necessary, and the agreement provides that the admission fee for the cottage program is considered to be the admission fee into the Home as well. The Executive Director emphasized that a cottager would be admitted automatically into the Home should that be required, and he also testified that the size of the admission fee is not related to the construction cost of the cottage alone, as it was in *Topton,* but is calculated according to the number of individuals residing therein.

It is true, of course, that the size of the admission fees here concerned clearly indicates that the cottage program is designed for persons of financial means who have no immediate need of charity.[2] Indeed, the evidence establishes that one of the practical purposes of the cottage program here was to provide revenue to pay the expenses of 60% of the persons in the main

---

[2] The admission fee for the cottages involved in this appeal have ranged from $20,500 to $25,500.

building who have no funds. Still, the use of the proceeds from a property is not determinative as to whether or not a tax exemption should be granted for that property,[3] and we believe that the fact that a cottager here is entitled to admission into all other parts of the Home when and as necessary brings this case within the holding of the *Presbyterian Homes Tax Exemption Case*, 428 Pa. 145, 236 A.2d 776 (1968), where our Supreme Court stated that the charitable exemption of a home for the aged was not affected because some of the tenants paid their own expenses and the home was, therefore, partially self-supporting. *See also Four Freedoms House of Philadelphia, Inc. v. Philadelphia*, 443 Pa. 215, 279 A.2d 155 (1971).

The order of the Court of Common Pleas of Adams County is, therefore, affirmed.

President Judge BOWMAN dissents.

---

[3] *See e.g., Dougherty v. City of Philadelphia*, 314 Pa. 298, 171 A. 583 (1934).