Wayne County Board of Assessment, Appellant *v.*
Federation of Jewish Philanthropies, Appellee.

Argued April 3, 1979, before President Judge
BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR.,
MENCER, DISALLE, CRAIG and MacPHAIL. Judges ROG-
ERS and BLATT did not participate.

*Thomas F. Kilroe,* Solicitor, for appellant.

*Lee C. Krause,* with him *Howell, Howell & Krause,* for appellee.

OPINION BY JUDGE MACPHAIL, June 22, 1979:

The Wayne County Board of Assessment (Board) appeals to this Court from an order of the Court of Common Pleas of Wayne County sustaining the appeal of the Federation of Jewish Philanthropies (Federation) and directing the Board to return property owned by the Federation to tax exempt status. The Board raises three issues for our consideration. We find all to be without merit and, accordingly, we affirm.

Initially, the Board argues that the Block Vacation Center (Block), a summer camp for the elderly located in Wayne County and owned by the Federation, is not a public charity and that the land it occupies should not be tax exempt. The law concerning tax exempt status for charitable institutions is well-settled in Pennsylvania. Article VIII, Section 2 of the Constitution of Pennsylvania provides that:

> (a)   The General Assembly may by law exempt from taxation:
>
> . . . .

(v) Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.

Pursuant to Article VIII, Section 2, the legislature enacted Section 202 of The Fourth to Eighth Class County Assessment Law, the Act of May 21, 1943, P.L. 571, *as amended,* 72 P.S. §5453.202, (Law) which provides in pertinent part:

(a) The following property shall be exempt from all county, borough, town, township, road, poor, county institution district and school (except in cities) tax, to wit:

. . . .

(3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose: Provided further, That the property of associations and institutions of benevolence or charity be necessary to and actually used for the principal purposes of the institution and shall not be used in such a manner as to compete with commercial enterprise.

Statutory provisions creating tax exemptions are subject to a strict interpretation. An entity claiming entitlement to a tax exemption has the burden of prov-

ing that it comes within the statutory and constitutional exemption. *Robert Morris College v. Board of Property Assessment, Appeals and Review,* 5 Pa. Commonwealth Ct. 648, 656, 291 A.2d 567, 572 (1972). "The question of entitlement to an exemption is a mixed one of law and fact, . . . and absent any abuse of discretion or a lack of supporting evidence the decision of the trial judge is binding on this Court." (Citation omitted.) *Lutheran Social Services, Adams County, Pennsylvania v. Adams County Board for Assessment and Revision of Taxes,* 26 Pa. Commonwealth Ct. 580, 583, 364 A.2d 982, 984 (1976).

The prerequisites for tax exempt status were set forth by our Supreme Court more than forty years ago in *Young Men's Christian Association of Germantown v. Philadelphia,* 323 Pa. 401, 409, 187 A. 204, 208 (1936):

> [A]n institution claiming to be benevolent or charitable . . . must possess an eleemosynary characteristic not possessed by institutions or property devoted to private gain or profit. What is 'given' must be more nearly gratuitous than for a price which impresses one as being proportionate to the services rendered. There must be facts which justify a finding that the 'actual use and occupation' of the premises is primarily for the designated charitable object and not largely for commercial purposes.

This Court has more recently restated the requisite characteristics which an institution must prove to come within the statutory tax exemption. Among these are freedom from a private profit motive, significant charitable support for the institution, and provision of charitable services through scholarships or other financial assistance. *See Point Park Junior College v. Board of Property Assessment,* 23 Pa. Commonwealth Ct. 367, 374, 351 A.2d 707, 710 (1976); *City of Harris-*

burg v. *Presbyterian Apartments, Inc.,* 18 Pa. Commonwealth Ct. 428, 434, 337 A.2d 297, 300 (1975); *Robert Morris College v. Board of Property Assessment, Appeals and Review,* 5 Pa. Commonwealth Ct. at 658, 663, 291 A.2d at 575-76. In applying these criteria to the Federation and Block, we conclude that they are entitled to tax exempt status.

The Federation is an "umbrella type community chest for [more than 130] charitable ventures in the New York City area." It is a strictly nonprofit organization funded by charitable donations. Block is one of the charities funded by the Federation. Block operates at a deficit on a yearly basis. There is no private profit motive within either the Federation or Block. There can be no dispute that the property of the Federation and Block located in Wayne County is actually used and occupied exclusively for its designated charitable purpose—a summer camp for the elderly. It has no commercial purposes. Finally, the services provided, although not entirely without cost to the participants, are "more nearly gratuitous than for a price which impresses one as being proportionate to the services rendered."

The Board has made much of the fact that all campers attending Block pay fees for the services they receive. It must be remembered that tax exempt status will not be denied merely because a purely public charity accepts fees from those it serves. *See Four Freedoms House of Philadelphia, Inc. v. Philadelphia,* 443 Pa. 215, 220, 279 A.2d 155, 157 (1971); *Vanguard School Tax Exemption Case,* 430 Pa. 378, 381, 243 A.2d 323, 324 (1968). The crucial question in a case such as this is not how much money is received from camp participants, but how that money is spent.

Evidence presented at trial showed that 95 per cent of Block's campers are subsidized to some extent. The maximum fee charged, $120.00 per week, is paid by ap-

proximately 3 to 5 per cent of the campers. Some pay as little as $5.00 per week; the average fee paid is $60.00 per week. The average cost of maintaining the campers is $100.00-$105.00 per week. In 1976, Block collected $170,000-$180,000 in campers' fees while operating expenses for the same year totalled $230,000-$250,000. The deficit is made up by contributions from the Federation and private donations by Block's board of directors.

These facts are similar to those in two other charitable tax exemption cases decided by our Courts. In *Presbyterian Homes Tax Exemption Case,* 428 Pa. 145, 236 A.2d 776 (1968), the Supreme Court noted that even though residents of the home paid for 80 per cent of the home's operating expenses, the fees did not cover capital improvements and the home never operated at a profit. Furthermore, the Court noted, even if the home had realized a profit, the profit would have benefitted the home, not a private individual or corporation. Similarly, in *Wayne County Board of Assessment v. Rolling Hills Girl Scout Council,* 19 Pa. Commonwealth Ct. 484, 353 A.2d 498 (1975), we noted that although Girl Scout campers paid camping fees, the amount paid failed to cover day-to-day operating expenses without even considering year-round expenses. In both of those cases, the charities were granted tax exempt status. Finding that the Federation and Block meet all of the criteria for tax exemption, we are compelled to reach the same conclusion here.

The Board next argues that even if the Federation and Block are to receive a tax exemption on the Wayne County property, the trial court erred in exempting all 537.72 acres from taxation. In essence, the Board argues that since all of Block's campers are elderly, the average age being 73, and since much of the camping property is rough and wooded, the campers are unable to make use of the property in its entirety and, there-

fore, all but the central portion containing living and dining facilities and a crafts center should be taxable.

Tax exemption is provided on the real property of a purely public charity which is necessary to and actually and regularly used by the charity. Pa. Const., art. VIII, §2; Section 202 of the Law. In proving that property is necessary to the use of the charity, absolute necessity is not required. Rather, the institution must show a "reasonable necessity" embracing the idea of convenience and usefulness for the purposes intended. *Presbyterian-University of Pennsylvania Medical Center v. Board of Revision of Taxes,* 24 Pa. Commonwealth Ct. 461, 464, 357 A.2d 696, 698 (1976); *Lancaster Theological Seminary Tax Exemption Case,* 207 Pa. Superior Ct. 12, 14, 214 A.2d 285, 286 (1965). More important, whether a charity's land is eligible for tax exemption depends on whether the land is *actually used* for the charity's purposes. *Overmont Corp. v. Board of Revision of Taxes,* 25 Pa. Commonwealth Ct. 173, 177, 360 A.2d 302, 304 (1976).

The purpose of the camping program at Block is to provide a variety of summer camping experiences to elderly persons from the New York City area. Included among the camp's programs are nature study, gardening, overnight hiking and camping expeditions, berry picking, swimming, fishing, and arts and crafts activities. The camp property consists of a 65 acre lake, two extensive nature paths spread over a great deal of the property, and several overnight camping sites. We agree with the trial court that:

> The evidence of use indicates that all of the property . . . is reasonably necessary to carry out the broad charitable principles of the fa-. cility. . . .
>
> . . . .
>
> There was no evidence that any part of the property in question was used for anything

other than the general purposes for which the entire facility was instituted.

Accordingly, we hold that the court was correct in ordering tax exempt status for the entire 573.72 acres of land.

Finally, the Board argues that the lower court erred in admitting into evidence the 1974 audit of the Block Vacation Center.[1] We find that the audit was properly admissible pursuant to Section 2 of the Uniform Business Records as Evidence Act, Act of May 4, 1939, P.L. 42, 28 P.S. §91b (Uniform Act) which provides that:

> A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

The Board argues that the audit should not have been admitted because Philip Balsam, the witness who testified concerning the audit, was not an accountant and did not prepare the audit and because the audit contained information concerning a separate camp operated by Block in Florida. While the Board's assertions are true, they are not grounds for ruling the audit inadmissible.

---

[1] Although the Board raised this objection both during and after trial, the lower court did not rule on the issue in his opinion. Since we agree with the court's initial decision to overrule this objection and since the record before us is adequate for review purposes, we see no reason to remand this case for further consideration by the lower court.

The law does not require a witness qualifying a business record to be the preparer of the record or even to have personal knowledge of the facts reported in the record. *Commonwealth v. Kelly,* 245 Pa. Superior Ct. 351, 363, 369 A.2d 438, 444 (1976). Here, although Balsam did not physically prepare the audit, as Executive Director of Associated Camps and of Block Vacation Center, he was intimately familiar with the financial affirs of Block. He testified that he kept records of all of the expenses connected with Block and that his records coincided with the official audit. He also testified that the audit was made in the regular course of Block's business and that it was prepared in relation to calendar year 1975. Due to the other extensive, competent evidence presented concerning Block and its financial status, we find it neither relevant nor harmful that the audit contained information concerning the camp in Florida.[2] The criteria for admissibility of business records as established by Section 2 of the Uniform Act have clearly been met in this case and the court committed no error in admitting the audit. *Cf., Hinkle v. Unemployment Compensation Board of Review,* 9 Pa. Commonwealth Ct. 512, 308 A.2d 173 (1973) (employment record held admissible when qualified by labor relations manager who did not prepare the record but who had access to company's employment records).

Finding no reason to disturb the decision of the Court of Common Pleas of Wayne County, we affirm.

## ORDER

AND Now, this 22nd day of June, 1979, the order of the Court of Common Pleas of Wayne County, Civil

---

[2] If anything, the inclusion of the Florida figures would be beneficial to the Board's argument. The Florida camping program pays part of the salary of Block's director. Without this assistance, Block's deficit would be larger than actually reported at trial.

Action—Law, at No. 123 April Term, 1977, dated December 23, 1977, is affirmed.