In Re: Appeals of Marple Newtown School District Etc. Marple Newtown School District, Appellant.

Argued April 3, 1979, before President Judge
Bowman and Judges Crumlish, Jr., Wilkinson, Jr.,
Mencer, DiSalle, Craig and MacPhail. Judges Rog-
ers and Blatt did not participate.

*Vram Nedurian, Jr.,* for petitioner.

*Edward J. Carney, Jr.,* for respondent.

*William Fearen,* with him *Michael I. Levin,* and *Cleckner & Fearen,* for amicus curiae, Pennsylvania School Boards Association.

OPINION BY JUDGE CRUMLISH, JR., September 18, 1979:

The Common Pleas Court of Delaware County held Dunwoody Village, medical center and adjoining property tax exempt.[1] The taxing authority, Marple Newtown School District, appeals. We affirm.

The Dunwoody Home (Home) was established in 1924 as a Pennsylvania non-profit corporation, devoted to the care of the elderly. Historically, the Home and approximately 20 acres actually used in connection therewith have been tax exempt, the remainder of its property was taxed nominally, this portion now being the subject of this contest.

In 1975 the Dunwoody Home completed construction of a 65-acre retirement community known as Dunwoody Village (Village) on a property owned by and adjacent to the Home.

The issue in dispute is whether Dunwoody Village, which includes a medical center and surrounding prop-

---

[1] Real estate taxes were assessed against Dunwoody Village, medical center, and adjoining property in 1975, 1976 and 1977. The Board of Assessment Appeals of Delaware County found the medical center to be tax exempt but refused to grant similar status to the Village and 30 to 40 odd acres adjoining the premises. Separate appeals were taken for each of the years in question which were consolidated for argument before this Court and the court below.

Further, there are procedural questions raised by each party relating to the manner in which the appeal was taken. We are of the opinion, as was the court below, that all actions of the Board of Assessment covering the medical care facility and remaining facilities are properly before this Court for adjudication.

erty, is a purely public charity and thus entitled to the tax exemption applied to the Home.[2] As in the usual case of this type, a close scrutiny of the nature of the operation determines the tax status. We, therefore, consider the following facts.

Dunwoody Village is composed of a community building, 196 apartments, 35 country houses, and a medical center. The community building has a lobby, meeting rooms, auditorium, lounge, kitchen, dining room, barber shop, beauty salon and craft shop. Apartments range from studios to two bedrooms. Country houses are one and two bedrooms. There are connecting passageways between the community building and the residences. The Village is serviced by all modern conveniences and carpeted throughout. Each occupant furnishes his own unit.

The Village restricts applicants to financially secure persons over the age of 65 who are physically capable of "independent living." Acceptance is within the sole discretion of the Village management. Low income persons generally will not be admitted.

An "entry fee" is charged upon admission, varying in amount depending on the size and style of the apartment or house. In 1975 they ranged from $18,000 for a studio to $53,500 for a two-bedroom country house. Entry fees approximated 70% of the cost of construction.

In addition, there is a monthly care and service fee which reflects the size and style of the dwelling as well as the number of persons residing in the unit. In 1975, monthly fees ranged from $376 for a one-person studio

---

[2] School District also challenges the validity of the valuation placed on the remaining land and buildings. However, since we affirm the opinion of the lower court and find the Village, medical center and adjoining property tax exempt, we need not decide this issue.

to $1,000 for a two-person, two-bedroom country house. Adjustments are made periodically to reflect changes in the costs of operations.

The Village provides all utilities except outside telephone service. Weekly housekeeping, linen service, maintenance, storage space, three meals per day in the dining room with tray service for residents unable to dine in the community dining room, and medical care are included in the monthly fee.

Medical care is generally provided in the medical facility located on the premises. As previously stated, the monthly care fee paid by the resident covers *all* medical expenses with the exception of those resulting from a pre-existing medical condition specifically enumerated in the resident's care contract. Eyeglasses, hearing aids, dentistry (but not dental surgery), dentures, inlays, orthopedic appliances, and therapy for psychiatric disorders also are not covered by the monthly fee. Medical expenses incurred when a patient is transferred from the Dunwoody Medical Center to an outside medical facility are generally paid by the Village. Hospital, health and accident insurance coverage is required and the right of subrogation is given to the Village.

At the time of the assessment, the medical facility contained 25 beds. It now has 60. It provides acute as well as emergency medical care. Surgery and long-term care are available to the chronically ill. Sixteen physicians are associated with the facility and registered nurses and support personnel are on 24-hour duty.

The medical center does not provide care for residents of Dunwoody Home and service is almost exclusively limited to Village residents. Emergency service, however, is provided to residents and non-residents alike.

Once admitted to the Village, no resident may be required to leave for financial reasons. The Amended Articles of Incorporation and order of the Delaware County Orphans' Court entered October 17, 1972, forbid the eviction of any resident because he is financially unable to pay the monthly fees. Moreover, the resident's care agreement provides for partial or total subsidy of a resident's monthly payments should the resident be unable to meet such payments because of circumstances beyond his control. Thus, once admitted, residents are guaranteed that they will be cared for by the community for life even if they should become unable to pay.[3]

The taxing entity's argument in chief is that, because there is a substantial entry and monthly care fee, the Village is not a purely public charity. In essence, what they contend is that institutions designed to care for financially secure elderly persons, which charge for their services, per se, cannot qualify for tax-exempt status. This argument is without merit and has been so declared. *See Presbyterian Homes Tax Exemption Case,* 428 Pa. 145, 236 A.2d 776 (1968); *Lutheran Social Services v. Adams County Board for Assessment and Revision of Taxes,* 26 Pa. Commonwealth Ct. 580, 364 A.2d 982 (1976).

Whether an institution qualifies as a charity is a mixed question of law and fact which must be ascertained from a consideration of all the circumstances and not by the application of a strict generic standard. The concept is continually broadening to include new services designed to achieve changing community objectives. *Presbyterian Homes Tax Exemption Case, supra.*

---

[3] This was the finding of the lower court which, being supported by substantial evidence, is binding upon this Court.

The societal need for adequate governmental and charitable care for the elderly and the importance of a public policy encouraging such work have become widely accepted, and it is the established law of this Commonwealth that institutions and organizations dedicated to providing such care serve a charitable purpose regardless of the financial status of the persons seeking refuse within their confines.

> 'The courts have long recognized and declared that charity is not limited to giving alms, is not confined to relief of the poor, may extend to the rich in areas where they are not able to care for themselves, and extends to those social objectives which promote the general welfare and would be served by the government in the absence of philanthropic enterprises such as homes for the aged. *Historically, and wellnigh unanimously, the courts have found homes for the aged to be charitable institutions where conducted at cost or less.* (Emphasis in original.) *They have also recognized that man, especially the old, does not live by bread alone; that though he be able to pay for all material wants he nevertheless may be dependent upon his fellow man or the government to protect him from the haunting fear of loss of all his property with resultant poverty, fear of illness or other physical disability overtaking him with no one near to help, fear of the loneliness arising from absence of social contacts, fear of any of the tragedies of old age where there is no one standing by to help.'* (Emphasis added.)

*Presbyterian Homes Tax Exemption Case, supra,* 428 Pa. at 152, 236 A.2d at 779-80.

Equally well established is that the charitable exemption of a home for senior citizens is not negated

merely because residents pay for the services they receive.

> 'A purely public charity does not cease to be such where it receives some payment for its services.'

*Presbyterian Homes Tax Exemption Case, supra,* 428 Pa. at 154, 236 A.2d at 781.

> To adopt this argument of the appellants would require us to hold that whenever a non-profit institution made a charge for its care or services to any resident or patient, the institution would be precluded from obtaining tax exemption. Consequently, hospitals which charge large sums for the care of and services to paying patients, and colleges and universities which charge tuition to countless students, would not be entitled to real estate tax exemption. This interpretation and result is not required by the language or spirit of the Constitution of Pennsylvania or . . . the decisions of this Court.

*Presbyterian Homes Tax Exemption Case, supra,* 428 Pa. at 154, 236 A.2d at 780.

A "purely public charity" is one that is entirely free from private profit motive. *American Society for Testing and Materials v. Board of Revision of Taxes,* 423 Pa. 530, 225 A.2d 557 (1967).

Examination of the record discloses that the Village has not realized a profit in any given year. To the contrary, the Village suffered a substantial operating loss in 1976. More importantly, it establishes that all fees as well as any profit which might be derived from the operations of the Village are used to pay bona fide operating expenses or to benefit and improve the facilities of the retirement community and are not used to benefit any individual or corporation operated for private profit.

Critical to our determination is that once admitted to the Village, no resident may be obligated to leave because he is financially destitute. It is on this basis that we distinguish this case from our holding in *The Lutheran Home at Topton, Pennsylvania Tax Appeal,* 6 Pa. Commonwealth Ct. 199, 293 A.2d 888 (1972), and find that *Lutheran Social Services v. Adams County Board for Assessment and Revision of Taxes, supra,* controls, where this Court held a cottage program for financially secure elderly tax exempt, stating:

> The critical difference in the Lutheran Social Services program as contrasted with the Topton program is that each cottager here is entitled to all of the services offered by the Home once the admission fee is paid, regardless of whether or not he or she can pay for any or all of the additional services which may be later required.

*Lutheran Social Services, supra,* 26 Pa. Commonwealth Ct. at 585, 364 A.2d at 985.

> It is true, of course, that the size of the admission fees here concerned clearly indicates that the cottage program is designed for persons of financial means who have no immediate need of charity. Indeed, the evidence establishes that one of the practical purposes of the cottage program here was to provide revenue to pay the expenses of 60% of the persons in the main building who have no funds. Still, the use of the proceeds from a property is not determinative as to whether or not a tax exemption should be granted for that property, and we believe that the fact that a cottager here is entitled to admission into all other parts of the Home when and as necessary brings this case within the holding of the *Presbyterian Homes Tax Exemption*

*Case,* 428 Pa. 145, 236 A.2d 776 (1968). . . .
(Footnotes omitted.)

*Lutheran Social Services, supra,* 26 Pa. Commonwealth Ct. at 586-87, 364 A.2d at 985.

The second major contention of the taxing authority relates to the Dunwoody medical center which, it argues, does not qualify as a hospital and therefore may not be declared tax exempt.

Whether the medical center constitutes a hospital is irrelevant to our consideration. Article VIII, Section 2(a)(v) of the Pennsylvania Constitution and the General County Assessment Law[4] exempts from local taxation all property actually and regularly used by a purely public charity in connection with its charitable purpose. Dunwoody Village is a purely public charity as a matter of law and fact. The medical center is an intimate and essential part of the life care program offered by the Village and therefore must share in its charitable purpose and tax exemption.

The taxing authority, in its final argument, asserts that the 30 to 40 acres surrounding the Village are unnecessary to its charitable purpose and therefore may not share in its exemption.

> The right to say what is reasonably necessary for the occupancy and enjoyment of such a charity is primarily for the governing body of the charity. . . .
>
> We agree with appellant that ultimately the courts may reject the determination of 'reasonable necessity' made by the governing body of the charity where the limit of its discretion has been clearly exceeded. . . .

*Shadyside Hospital Appeal,* 207 Pa. Superior Ct. 261, 265, 218 A.2d 355, 356-57 (1966).

---

[4] Section 204 of The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-204.

The trial court found that Dunwoody's determination to hold this excess land for reasonable expansion did not exceed its discretion and hence was exempt. There is in the record substantial evidence to support this holding and we will not dispute it.

Accordingly, we

### ORDER

AND Now, this 18th day of September, 1979, the order of the Court of Common Pleas of Delaware County declaring Dunwoody Village, Medical Life Care Center, and adjoining land tax exempt, is affirmed.

President Judge BOWMAN and Judge MENCER dissent.