631 A.2d 1025

**Eugene T. BOYLE and Michael P. Boyle Administrators of the Estate of Eugene F. Boyle, t/a Eugene Boyle Associates,**

v.

**Michael STEIMAN, Esquire, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 7, 1993.

Filed Sept. 23, 1993.

2

4

Thomas E. Coval, Willow Grove, for appellant.

Joseph R. Glancey, Philadelphia, for appellees.

Before CIRILLO, BECK and KELLY, JJ.

KELLY, Judge:

This is an appeal from the judgment in the amount of $23,475.00 entered in favor of the appellees, the administrators of the estate of Eugene F. Boyle. The appellant, Michael Steiman, Esquire, has raised three issues for our review: 1) whether the presiding motions court judge, in light of new evidence, committed error by lifting the sanctions order im-

posed by his predecessor in motions court, which precluded the appellee-decedent from presenting certain evidence for failing to comply with the appellant's discovery requests; 2) whether the trial court committed error by admitting into evidence, pursuant to the Uniform Business Records as Evidence Act, 42 Pa.C.S.A. § 6108, business records prepared primarily by the appellee-decedent in the absence of authenticating testimony from the appellee-decedent; 3) whether the administrators of the appellee-decedent's estate presented sufficient evidence to prove the existence of an oral contract between the appellant and the appellee-decedent. We affirm.

The relevant facts and procedural history as ascertained by the limited record are as follows. On April 7, 1989, the appellee-decedent, Eugene F. Boyle, a private investigator, filed a civil action complaint against the appellant, Michael Steiman, Esq., a personal injury attorney. In this complaint, the appellee-decedent alleged that the appellant had failed to pay him $27,250.00 in fees for investigations which the appellant had hired him to conduct in various personal injury cases. Attached to the complaint were two exhibits, Exhibit A and Exhibit B. Exhibit A contained a list of all unpaid invoices through June 4, 1988, while Exhibit B contained photocopies of all the unpaid investigations bills that had been submitted to the appellant. The photocopies of the unpaid investigation bills contained both the appellee-decedent's file number and the names of the appellant's clients on whose behalf the investigations were undertaken.

The appellant then served interrogatories upon the appellee-decedent requesting information concerning the appellee's record keeping methods in his investigations. The appellant also sought the production of any notes, telephone calls, automobile mileage, photographs and details of each investigation. The appellee-decedent's former counsel responded to the interrogatories by stating that all notes and records pertaining to the investigations were incorporated into the various investigation reports that were under the appellant's control.

Despite receiving notice in the appellee-decedent's answers to the interrogatories that all of the information and documents he sought to discover were already in his control, the appellant did not examine his files. Rather, he filed a "motion to compel full and complete answers to interrogatories and a response to request for production of documents." When the appellee-decedent's former counsel failed to contest this motion, the then-presiding motions court judge, the Honorable Bernard J. Avellino, entered an order on January 29, 1990, directing the appellee-decedent to file full and complete answers to all interrogatories and to comply with the appellant's request for documents within twenty days or risk sanctions.

Upon being served with Judge Avellino's January 29, 1990 order, the appellee-decedent's former counsel submitted late answers to the interrogatories and stated that the documents sought by the appellant were already in the appellant's possession. The appellant, once against without checking his own files, moved for sanctions alleging that the appellee-decedent's response did not satisfy the requirements of the January 29, 1990 order. Although the appellant had always had in his own files the information and documents for which he sought sanction of the appellee-decedent for failing to produce, *see* N.T. 2/24/92 at 42–45 (the appellant admitted at trial that the information and the investigation reports pertaining to the disputed bill were contained in his files when he reviewed the files shortly before trial), the appellee-decedent's former counsel did not contest the motion for sanctions. Judge Avellino subsequently entered an order on June 29, 1990, precluding the appellee-decedent from introducing evidence on any matter covered by the interrogatories.

Shortly after the preclusion order was entered, the appellee-decedent died. The administrators of the appellee-decedent's estate, his sons and partners, Eugene T. Boyle and Michael P. Boyle, then retained new counsel to represent the estate in this matter. New counsel immediately filed a motion to rescind the preclusion order, bringing to the court's attention for the first time that the appellant had been seeking production of documents which were already under his control.

Because Judge Avellino had been rotated out of motions court, this new evidence was presented to his successor, Judge Maier. Judge Maier then entered an order stating the earlier preclusion order was being lifted in the "interests of justice." This order also directed that supplemental answers to the appellant's interrogatories be filed. The discovery process continued. On August 15, 1991, the administrators served interrogatories and a request for production of documents upon the appellant. After the appellant failed to answer the interrogatories or produce the requested documents, the administrators filed a motion to compel answers to interrogatories and request for production of documents. On December 20, 1991, Judge Maier entered an order directing the appellant to file full and complete answers to the interrogatories and produce the requested documents within ten days or risk sanctions.

On February 24, 1992, a bench trial was conducted before the Honorable Pamela Pryor Cohen. At this trial, Michael P. Boyle presented photocopies of a ledger made in the appellee-decedent's handwriting pertaining to the firms' business with the appellant. Michael P. Boyle also testified that prior to the filing of this lawsuit he, his late father, and his brother met with the appellant in 1988 regarding the unpaid bills. Michael P. Boyle also testified that at the meeting the appellant agreed that he would pay these outstanding bills.

The appellant then testified in his own behalf stating that the pre-lawsuit meeting did occur, however only the appellee-decedent and one of his sons was present. (N.T. 2/24/92 at 38). The appellant then testified that at this meeting he did not agree to pay all of the outstanding bills. The appellant also testified that his position at the meeting was that many of these bills had already been resolved and that the billing rate was excessive on the other bills. (N.T. 2/24/92 at 40). Finally, the appellant testified that at the meeting he explained for the benefit of the appellee-decedent's two sons that he had a special working relationship with the appellee-decedent. (N.T. 2/24/92 at 43). In this special working relationship, when a case was assigned to the appellee-decedent for investi-

gation, the appellee-decedent was to conduct the investigation and submit the report and bill to the appellant. If, on the basis of the report, the case was the type of case with which the appellant wished to proceed, the appellee-decedent would be paid. However, based on the result of the appellee-decedent's investigation, or for any other reason, if the appellant did not wish to proceed with the case, the appellee-decedent was to forego payment for the investigation. (N.T. 2/24/92 at p. 44). The trial court found the appellant's testimony to be incredible and held for the administrators in the amount of $23,475.00. Post-trial motions were denied. This timely appeal followed.

On appeal, the appellant raised the following issues for our review.

1. WAS IT ERROR FOR ONE PRETRIAL JUDGE TO OVERRULE THE INTERLOCUTORY ORDER OF ANOTHER PRETRIAL JUDGE CONCERNING SANCTIONS FOR REPEATED VIOLATIONS OF ORDERS DIRECTING PLAINTIFF TO COMPLY WITH DISCOVERY REQUESTS?

2. DID THE COURT ERR IN ADMITTING DOCUMENTARY EVIDENCE WHICH WAS HEARSAY AND NOT PROPERLY AUTHENTICATED AS A BUSINESS RECORD?

3. DID THE LOWER COURT ERRONEOUSLY DETERMINE THAT PLAINTIFFS PROVED THE EXISTENCE OF A CONTRACTUAL RELATIONSHIP BETWEEN THE PARTIES AND CONTRADICTED EVIDENCE CONCERNING IT WHEN NO PLAINTIFF WHO TESTIFIED HAD ANY PERSONAL KNOWLEDGE OF THE CONTRACTUAL RELATIONS?

(The appellant's brief at 2).

In his first issue on appeal, the appellant claims that Judge Maier erred when he overruled Judge Avellino's order precluding the appellee-decedent from introducing evidence of any subject covered by the interrogatories due to his failure to

answer the interrogatories. The appellant argues that Judge Maier acted improperly by reversing an interlocutory order entered by another judge of coordinate jurisdiction in the same litigation. Thus, the appellant asserts that he is entitled to a new trial in which the administrators of the appellee-decedent's estate are precluded from introducing any evidence covered by Judge Avellino's June 29, 1990 preclusion order.

A party may not remain silent and take his chances on the verdict then complain if it is adverse. *Carter by Carter v. U.S. Steel Corp.*, 529 Pa. 409, 424, 604 A.2d 1010, 1018 (1992); *Zeman v. Canonsburg Borough*, 423 Pa. 450, 453, 223 A.2d 728, 729 (1966). In order to preserve an issue for appellate review a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. *Taylor v. Celotex Corp.*, 393 Pa.Super. 566, 583, 574 A.2d 1084, 1093 (1990). Where a thorough review of the record discloses no basis to conclude that an appellant preserved an issue raised in his motion for new trial by a timely or specific objection at trial, such an issue is waived for the purposes of appellate review. *Piernikowski v. Cardillo*, 263 Pa.Super. 202, 397 A.2d 817 (1979). *See also East Texas Motor Freight, Diamond Div. v. Lloyd*, 335 Pa.Super. 464, 484 A.2d 797 (1984) (it is unnecessary for this Court on appeal to address an argument not presented at trial but subsequently presented in opposition to a motion for directed verdict and in post-verdict motions).

Here, there is nothing in the record to indicate that the appellant voiced an objection to Judge Maier's consideration of the administrator's motion to lift the preclusion order imposed by Judge Avellino. Our review of the record does not reveal that the appellant even filed an answer in opposition to the administrators' motion to lift the preclusion order. Additionally, the appellant has not made available to this Court a transcript of the proceeding before Judge Maier which might permit us to determine whether he voiced an objection to Judge Maier's consideration of the administrators' motion to lift the preclusion order. Accordingly, because we have noth-

ing to indicate, other than his bald assertion in his post-trial motions, that he actually opposed the administrators' motion to lift the preclusion order, we are constrained to hold that the appellant failed to properly preserve this issue for appellate review.

Moreover, we note that it is the duty of the appellant to supply this Court with a record which is sufficient to permit a meaningful appellate review. *School District of Aliquippa, et al. v. Maryland Casualty Company,* 402 Pa.Super. 569, 575, 587 A.2d 765, 768–69 (1991). A failure by the appellant to insure that the original record certified for appeal contains sufficient information to conduct a meaningful appellate review constitutes a waiver of the issue sought to be reviewed. *Burns v. Kabboul,* 407 Pa.Super. 289, 313 n. 1, 595 A.2d 1153, 1165 n. 1 (1991). The Pennsylvania Rules of Appellate Procedure provide specific steps that are to be taken in absence of a transcript to a proceeding which is the subject of an appeal. Pa.R.App.P. 1923 instructs an appellant as follows:

> If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may serve objections or propose amendments thereto within ten days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the lower court for settlement and approval and as settled and approved shall be included by the clerk of the lower court in the record on appeal.

The purpose of Pa.R.A.P. 1923 is to provide a reviewing court with an "equivalent picture" of the proceedings when there is no transcript of the proceedings. *Oblon v. Ludlow–Fourth Corp.,* 406 Pa.Super. 591, 604–05 n. 9, 595 A.2d 62, 69 n. 9 (1991); *Commonwealth v. Buehl,* 403 Pa.Super. 143, 148 n. 7, 588 A.2d 522, 524 n. 7 (1991).

Here, the appellant never attempted to reconstruct for the purposes of appellate review the proceeding before Judge

Maier in accordance with Pa.R.App.P. 1923. Thus, this Court is without a clue as to what actually transpired at the oral argument of the administrators' motion for the recision of the preclusion order. Accordingly, absent a Pa.R.App.P. 1923 statement, this Court is without an adequate record to conclude that Judge Maier erred in lifting the preclusion order. *See Oblon v. Ludlow–Fourth Corp., supra* at 605, 595 A.2d at 69.

Finally, the limited record presented to this Court supports Judge Maier's order lifting the sanctions imposed against the appellee-decedent by the predecessor in motions court, Judge Avellino. We reach this result for the following reasons.

It is a well recognized principle that "... judges of coordinate jurisdiction sitting in the same court and in the same case should not overrule the decisions of each other." *Golden v. Dion & Rosenau,* 410 Pa.Super. 506, 510, 600 A.2d 568, 570 (1991) (quoting *Okkerse v. Howe,* 521 Pa. 509, 516, 556 A.2d 827, 831 (1989)). The purpose of this rule is to ensure a degree of pretrial finality "so that judicial economy and efficiency can be maintained". *Salerno v. Philadelphia Newspapers, Inc.,* 377 Pa.Super. 83, 87, 546 A.2d 1168, 1170 (1988) (quoting *Commonwealth v. Eck,* 272 Pa.Super. 406, 409, 416 A.2d 520 522 (1979)). Absent some new evidence, it is improper for a trial judge to overrule an interlocutory order of another judge of the same court in the same case. *Reifinger v. Holiday Inns Inc.,* 315 Pa.Super. 147, 461 A.2d 839 (1983). However, an exception exists where new evidence is placed on the record in the interim between the first trial court judge's ruling and the second trial court judge's reassessment. *Gabovitz v. State Auto Ins. Assn.,* 362 Pa.Super. 17, 21 n. 2, 523 A.2d 403, 405 n. 2 (1987), *appeal denied,* 516 Pa. 634, 533 A.2d 92 (1987); *Melendez by Melendez v. City of Philadelphia,* 320 Pa.Super. 59, 62 n. 2, 466 A.2d 1060, 1062 n. 2 (1983). Where the record is materially different from the record that was before the preceding judge, it is not improper for the succeeding judge to reach a different result. *Hutchison by Hutchison v. Luddy,* 417 Pa.Super. 93, 110, 611 A.2d 1280, 1289

(1992); *McNally v. Dagney*, 353 Pa.Super. 402, 405, 510 A.2d 722, 724 (1986).

The purpose of discovery is to expedite litigation and not to provide an intermediate arena for jousting in the time between the pleadings and the actual trial. *Williams v. Triangle Publications*, 19 D. & C.2d 226 (1957). It is not a purpose of discovery for a party to supply, at its own expense, information already under the control or readily available to the opposing party. *See Brown v. Lower Allen Township*, 2 Pa.D. & C.3d 368 (1977); *1958 Asses. of Glen Alden Corp.*, 17 Pa.D. & C.2d 624 (1958). A plaintiff will not be compelled to answer a defendant's interrogatories when the matters contained in the interrogatories are at least equally within the defendant's knowledge. *Blum v. Parkview Hospital*, 2 Pa.D. & C.3d 345 (1976).

Instantly, Exhibits A and B of the appellee-decedent's complaint contained sufficient information to alert the appellant as to which cases in his files the appellee-decedent was alleging that appellant had not paid the appellee-decedent's investigation fees. Additionally, the appellee-decedent's initial answers to the interrogatories informed the appellant that the information he sought to discover was contained in the original investigation reports that were part of the appellant's own files. However, without any assertion that he had reviewed his own files and found that the information he sought was not there, the appellant filed a motion to compel this information from the appellee-decedent. The appellant's insistence that the appellee-decedent compile information that he subsequently was able to retrieve from his own files amounted to discovery gamesmanship [1]. Former counsel's laxity in alerting the trial court to this fact by failing to answer either the appellant's motion to compel or motion for sanctions permitted this charade to proceed.

1. We note that the appellant's own dilatory behavior during discovery was subsequently the subject of a December 20, 1991 order issued by Judge Maier instructing him to file full and complete answers to the administrators' interrogatories and produce the documents called for in their request for production of documents.

14

■ Therefore, the state of the record at the time Judge Avellino issued the preclusion order consisted only of the appellant's assertions that the appellee-decedent had failed to respond satisfactorily to the interrogatories or to produce the documents that the appellant required. Judge Avellino was not aware that the information and documents which the appellant sought were already under appellant's control. The first time the court became aware that the appellant already had the requested information in his files was when the succeeding motions judge, Judge Maier, entertained new counsel's motion for recision of the preclusion order. Thus, new counsel's motion to rescind the preclusion order and whatever evidence was offered at the subsequent non-transcribed oral argument represented a material change in the record and thereby permitted Judge Maier to reexamine and rescind the preclusion order entered by his predecessor in motions court.

In his second argument on appeal, the appellant contends that the trial court erred by admitting into evidence photocopies of the appellee-decedent's business ledgers pursuant to the business record exception to the hearsay rule (42 Pa.C.S.A. § 6108). The appellant argues that the appellee-decedent's son, Michael P. Boyle, the authenticating witness, had no involvement in the preparation of the business ledgers admitted into evidence by the trial court. Thus, the appellant asserts, Michael P. Boyle's testimony was insufficient to establish a proper foundation for the admission of the photocopies of the business ledgers into evidence pursuant to 42 Pa.C.S.A. § 6108. We disagree.

The Uniform Business Records as Evidence Act, 42 Pa. C.S.A. § 6108 provides, in the pertinent part, as follows:

A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of informa-

tion, method and time of preparation were such as to justify its admission.

42 Pa.C.S.A. § 6108 (emphasis added).

 The purpose of Uniform Business Records as Evidence Act is to create an additional exception to the hearsay rule in circumstances where a record of an act, a condition or an event was made in the regular course of business, at or near the time of the act, condition or event and where the sources of information, method and time of preparation were such as to justify its admission. *Joseph v. Krull Wholesale Drug Co.*, 147 F.Supp. 250 (E.D.Pa.1956), *affirmed*, 245 F.2d 231 (3d Cir.1957). The question of whether documents should be admitted under the "business records" exception to the hearsay rule is within the discretionary power of the trial court provided such discretion is exercised within the Uniform Business Records as Evidence Act. *Thomas v. Allegheny & Eastern Coal Co.*, 309 Pa.Super. 333, 340, 455 A.2d 637, 640 (1982). It is not essential under the Uniform Business Records as Evidence Act to produce either the person who made the entries or the custodian of the record at the time the entries were made. *In re Indyk's Estate*, 488 Pa. 567, 573, 413 A.2d 371, 373 (1979). Moreover, the law does not require that a witness qualifying business records even have a personal knowledge of the facts reported in the business record. *Wayne County Bd. of Assessment v. Federation of Jewish Philanthropies*, 43 Pa.Cmwlth. 508, 403 A.2d 613 (1979). As long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence. *In re Indyk's Estate, supra*, at 573, 413 A.2d at 373.

 Instantly, the testimony of Michael P. Boyle reveals that the records were primarily created by his father and secondarily by himself and his brother in the regular course of business. Michael P. Boyle also testified that the entries were made in the ledger, at or near the time information became

available and that the records required accurate entries. Thus, the testimony of the authenticating witness, Michael P. Boyle, was sufficient to establish a proper foundation for the admission of the records. Accordingly, the trial court did not abuse its discretion in directing that the records be admitted into evidence.[2]

The appellant's final argument on appeal is that the administrators failed to prove the existence of a contractual relationship between the parties. The appellant contends that, because the administrators admitted there was never a written investigational services contract between the parties, they bore the burden of proving the existence of an oral contract for investigational services. The appellant argues that the administrators failed to meet this burden because they failed to prove either that specific investigative services were rendered by the appellee-decedent on his behalf or that the fees for these investigative services were fair and reasonable. The appellant further argues that the administrators failed to present any evidence which contradicted his testimony that, pursuant to their understanding, the appellee-decedent was not entitled to be paid for his investigative services if the appellant failed to proceed with the personal injury case that was the subject of the investigation. Thus, the appellant asserts that the trial court erred in failing to grant his motion for judgment notwithstanding the verdict. We disagree.

The burden of proving an oral contract is on the party seeking to establish it. *Zinnel v. Bergdoll,* 9 Pa.Super. 522, 7 Del. 369 (1899); *Smith v. McLane,* 75 F.Supp. 219 (W.D.Pa.1948), *affirmed,* 174 F.2d 819 (3d Cir.1949). A verbal agreement differs from a written one in that when construing a written contract all negotiations leading up to the contract are presumed to be merged in the writing; moreover, oral testimony is not admissible to explain the written document in the absence of an ambiguity requiring such an explanation. *McCormack v. Jermyn,* 351 Pa. 161, 166, 40 A.2d 477, 480

2. We note that photographic copies of business and public records are admissible evidence pursuant to 42 Pa.C.S.A. § 6109 even if the original records are available.

(1945). However, when construing an oral contract the words constituting the agreement are merely parts of and imbedded in a general conversation, and the meaning must be interpreted with reference to the circumstances under which the parties contracted in light of the objectives to be accomplished. *Id.* In cases involving contracts wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to surrounding circumstances and course of dealing between the parties in order to ascertain their intent. *Westinghouse Electric Co. v. Murphy, Inc.,* 425 Pa. 166, 171, 228 A.2d 656, 659 (1967); *see also, Silverstein v. Hornick,* 376 Pa. 536, 103 A.2d 734 (1954).

Instantly, the evidence presented by the administrators was more than sufficient to meet their burden of proving the existence of an oral contract between the appellee-decedent and the appellant. The administrators' testimony reveals that the appellant would contact the appellee-decedent or the administrators with personal injury cases and these cases would be investigated and results of the investigations would be submitted to the appellant together with a bill. The appellant then paid every bill submitted to him. This course of dealing continued until 1983 when the appellant began to fail to pay some of the bills submitted to him by the appellee-decedent. Thus, the evidence presented by the administrators was sufficient to meet their burden of establishing the existence of an oral contract for investigative services between the parties. Additionally, the evidence established a course of dealings between the parties that proved that the appellee-decedent expected to be paid for his investigative services and was not accepting the investigation assignments on a contingency basis as alleged by the appellant. Finally, the appellant's own testimony establishes the existence of an oral contract between the parties for investigative services and that these services were provided by the appellee-decedent on all of the disputed bills. However, the trial court found incredible the appellant's assertion that under this oral contract or as it was called by the appellant, "special working relationship," appellant's obligation to pay for investigative

services was contingent upon whether he proceeded with the personal injury case that the appellee-decedent had been assigned to investigate. *See Summit Fasteners v. Harleysville Nat.*, 410 Pa.Super. 56, 66, 599 A.2d 203, 208 (1991) (evidence is no less effective in support of a party's case merely because it came into the case through an adversary rather than through the party.)

Based upon the foregoing, the judgment entered by the Honorable Pamela Pryor Cohen in favor of the administrator of the estate of Eugene F. Boyle in the amount of $23,475.00 is affirmed.

Judgment Affirmed.

CIRILLO, J., files a dissenting opinion.

CIRILLO, Judge, dissenting:

I respectfully dissent. In my opinion it was error for the Honorable Eugene E.J. Maier to overrule the preclusion order entered by the Honorable Bernard J. Avellino. I would find in favor of appellant Steiman on this claim, rendering further review of this appeal unnecessary.

The majority finds that due to Boyle's counsel's failure to respond to Steiman's discovery requests and Judge Avellino's sanctions orders, the fact that the discovery materials were in the possession of Steiman at the time of Judge Avellino's order constituted "new evidence" before Judge Maier and that the preclusion order was properly rescinded. I disagree.

There is no evidence in the record which establishes that Steiman ever had actual possession of *all* the discovery materials in question. Additionally, Steiman contends that he did not have possession. Even given possession, the majority loses sight of the fact that preclusion of the bills and invoices was secondary to Boyle's failure to comply. In other words, evidence of possession does not excuse Boyle's failure to comply with a court order or prohibit Steiman from requesting the proper discovery materials, regardless of whether the materials were subsequently found to be mere duplicates of already existing material in Steiman's possession. Steiman

was entitled to not only fully answered interrogatories but also all documentary evidence in pursuit of a defense to the litigation. The issue of possession is collateral to the real issue in this case: whether Judge Maier abused his discretion in rescinding an interlocutory order of a predecessor judge where the party sanctioned failed to abide by the predecessor's prior orders?

Boyle's counsel's failure to respond to the interrogatories cannot constitute "new evidence." I find no authority which states that an innocent party shall bear the brunt of an opposing party's counsel's mistakes. The majority's reasoning effectuates a transfer of the prejudice of the preclusion order onto the innocent third party here and undermines both the interlocutory nature of a preclusion order and the trial court's power of contempt. Boyle still maintains the right to appeal Judge Avellino's order at the conclusion of the case. To hold otherwise condones piecemeal determinations which serve only to consume both time and money.

Assuming these facts do constitute new evidence, the majority fails to recognize the sole factor which determines whether or not the successor judge may rule on the earlier order based upon the discovery of the new evidence—availability of the predecessor judge. Although the majority fails to address the issue of "unavailability," Boyle correctly acknowledges that the claim for rescission of the preclusion order based upon new evidence is proper *only if Judge Avellino was unavailable* at the time the motion to rescind was filed. Here, Judge Avellino was not unavailable.

Judge Maier's order mentions nothing about new evidence but only that Judge Avellino's order be rescinded in the "interest of justice." Any inference of Boyle's counsel's inaction does not constitute "new evidence" and the consequences of any such conduct is properly borne by Boyle.

At trial, the evidence was admitted and judgment was entered in favor of Boyle in the amount of $23,475.00. The trial court in its Pa.R.A.P.1925(a) opinion states that Steiman, although raising this issue in his post-trial motion, waived this

issue by his counsel's failure to object at trial to the admission of the previously precluded evidence. The Pennsylvania Supreme Court has held it to be fundamental that the parties in a civil trial make timely and specific objections to alleged violations of evidentiary or trial procedure. The failure to do so results in a waiver of that ground on appeal. Pa.R.A.P. Rule 302; *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

Prior to trial, Steiman's counsel objected at oral argument to the petition to rescind the earlier discovery order granting preclusion. Pennsylvania Rule of Civil Procedure 227.1(b) provides that post-trial relief may be granted when the grounds alleged were properly objected to at trial *or* where the grounds, if then available, were raised in pretrial proceedings by objection or by other appropriate method. As Steiman properly raised his objection at oral argument on the petition to rescind, I would find this issue properly included in the post-trial motion and on appeal.[1]

1. The majority notes that this court is without a clue as to what actually transpired before Judge Maier as no transcript was created. The majority states that the failure of Steiman to file an "equivalent picture" of the proceedings pursuant to Pa.R.A.P.1923 results in waiver of the coordinate jurisdiction issue. Most importantly, however, the majority holds that without such a "picture" this court cannot conclude that Judge Maier erred in rescinding Judge Avellino's preclusion order.

 After a review of the entire record certified for this appeal, I find ample support for effective appellate review. Additionally, the record contains Boyle's motion to rescind and Judge Maier's rescission order. The new evidence alleged by Boyle was as follows:

 Neither Boyle's children nor the decedent were aware that their prior counsel failed to adequately answer Steiman's interrogatories or that an order of preclusion had been entered against them.

 The originals of the documents requested by Steiman were in Steiman's possession at the time of Judge Avellino's order.

 Judge Avellino's order should be rescinded in the interest of justice. As discussed *infra*, these allegations do not constitute new evidence. Judge Maier's order expressly reveals that Judge Avellino's order was rescinded in "the interest of justice," and not as a result of new evidence. Further, Judge Maier makes no reference to Steiman's alleged possession of the disputed discovery materials. Thus, notwithstanding the majority's concern for the limited record before us, we can readily establish Judge Maier's abuse of discretion in overruling a predecessor judge's order *where the predecessor judge remains available*. As is further discussed, even had Judge Avellino been unavailable, the

Further, the order entered by Judge Avellino as discovery judge was interlocutory. A pretrial discovery order which effectively precludes a party from asserting certain defenses or presenting claims is not a final and appealable order. *See Bruno v. Elitzky*, 515 Pa. 47, 526 A.2d 781 (1987) (sanction order for failure to respond to interrogatories is interlocutory); *Joyce & Associates v. Pivirotto*, 358 Pa.Super. 50, 516 A.2d 763 (1986) (preclusion orders imposed as discovery sanctions are not appealable until the conclusion of the case). At the time the disputed order was rescinded, it retained its interlocutory nature. *See Pennsylvania Human Relations Comm'n v. Jones & Laughlin Steel Corp.*, 483 Pa. 35, 394 A.2d 525 (1978). Because the order is interlocutory, the trial court has the inherent power to reconsider its own ruling outside the 30–day limit for appeal and the trial court retains jurisdiction over the matter up until the rendition of a final disposition. Pa.R.A.P. 903; 42 Pa.C.S.A. § 5505; *Daywalt v. Montgomery Hosp.*, 393 Pa.Super. 118, 573 A.2d 1116 (1990); *Atlantic Richfield Co. v. J.J. White, Inc.*, 302 Pa.Super. 276, 448 A.2d 634 (1982). As such, the appellate court may properly review the order only after trial. *Joyce, supra.*

An order issued by a court with proper jurisdiction over the subject matter and the parties must be followed unless the order is subsequently reversed by orderly and proper proceedings. *Philadelphia M.T. Ass'n v. International Long. Ass'n*, 453 Pa. 43, 308 A.2d 98 (1973). Where a party fails to obey a court order concerning discovery, a court on proper motion may bar the disobedient party from introducing into evidence any support for claims or defenses, the subject matter of which was covered under the order. Pa.R.C.P. 4019; *Hutchison By Hutchison v. Luddy*, 417 Pa.Super. 93, 611 A.2d 1280 (1992). The imposition of sanctions against a party for failing to obey a discovery order is solely within the discretion of the trial court. *Feingold v. Philadelphia National Bank*, 313 Pa.Super. 579, 460 A.2d 339 (1983). Here, we

proper procedure would be to remand for an evidentiary hearing to determine whether or not new evidence was placed on the record subsequent to Judge Avellino's order.

are presented with the complex nature of an interlocutory discovery order entered by a predecessor judge which was subsequently reconsidered and overruled by another judge of equal jurisdiction.

It is improper for a judge of coordinate jurisdiction to overrule an interlocutory order entered by another judge in the same case. *Hainsey v. Com. Pa. Liquor Control Bd.*, 529 Pa. 286, 602 A.2d 1300 (1992); *Okkerse v. Howe*, 521 Pa. 509, 556 A.2d 827 (1989); *Commonwealth v. Brown*, 485 Pa. 368, 402 A.2d 1007 (1979); *Hutchison, supra; Golden v. Dion & Rosenau*, 410 Pa.Super. 506, 600 A.2d 568 (1991); *Vincent v. Fuller, Co.*, 400 Pa.Super. 108, 582 A.2d 1367 (1990); *Salerno v. Philadelphia Newspapers, Inc.*, 377 Pa.Super. 83, 546 A.2d 1168 (1988). It is an abuse of discretion for one judge to overrule another judge based upon the same record facts. *Hainsey, supra; Commonwealth v. Griffin*, 257 Pa.Super. 153, 390 A.2d 758 (1978). The rule is not based upon the second judge's lack of power or jurisdiction to decide the matter, *Atlantic Richfield, supra;* rather it is founded upon sound jurisprudence based on a policy of fostering finality of pretrial applications to insure that judicial economy and efficiency can be maintained, *Hainsey, supra, Hutchison, supra, Salerno, supra, Golden, supra, Vincent, supra,* and preventing a co-equal judge from overruling a colleague, *Commonwealth v. Madden*, 342 Pa.Super. 120, 492 A.2d 420 (1985); *Marmara v. Rawle*, 264 Pa.Super. 229, 399 A.2d 750 (1979).

The rule is also applicable to discovery orders. *Roseman v. Hospital of U. of PA.*, 377 Pa.Super. 409, 547 A.2d 751 (1988) *allocatur denied*, 524 Pa. 610, 569 A.2d 1369, and 525 Pa. 619, 577 A.2d 891 (1989). However, it is not without exceptions. As the majority notes, a successor judge can reconsider and rescind a predecessor's interlocutory order based upon a presentation of new evidence. *Brown, supra; Hutchison, supra; Golden, supra; Vincent, supra; Griffin, supra; Gabovitz v. State Auto Ins. Assn.*, 362 Pa.Super. 17, 523 A.2d 403 (1987), *appeal denied*, 516 Pa. 634, 533 A.2d 92 (1987). Or, a successor judge can act on a predecessor's order when the predecessor is unavailable due to death, retirement, expiration

of a judicial commission, or where the predecessor is appointed to a higher court, *Hutchison, supra, Duffy v. Gerst,* 286 Pa.Super. 523, 429 A.2d 645 (1981), or where any relevant legal authority has been decided in the interim period that would change the outcome of the prior order. *Vincent, supra; Golden, supra.* Boyle argues that where a successor judge is asked to reconsider the legal conclusions of an "unavailable" predecessor, it is not improper for the second judge to reach a different conclusion than his or her colleague where "new evidence" is presented on the record.

The record discloses that Judge Avellino was transferred out of discovery motion court and that Judge Maier was directed to preside over discovery matters. Judge Maier's replacement of Judge Avellino as discovery judge is insufficient to provide a basis for Judge Maier to reconsider Judge Avellino's interlocutory order. The majority, in my judgment, has reached the issue of "new evidence" without clearing the hurdle of "unavailability." Reassignment or transfer of a judge does not make that judge "unavailable" for purposes of reconsideration of those orders. *Reifinger v. Holiday Inns, Inc.,* 315 Pa.Super. 147, 461 A.2d 839 (1983). The exceptions enumerated in *Hutchison, supra,* and *Duffy, supra,* do not encompass the reassignment of a judge to another trial division.

In *Reifinger, supra,* the defendant filed preliminary objections to the plaintiff's complaint based on the lack of personal jurisdiction. These objections were denied by the trial judge. Thereafter, the trial judge was reassigned to the criminal division of the same court and the case was reassigned to a second trial judge. Just prior to trial, the defendant filed a motion for summary judgment. The record before the second judge was in no respect materially different with regard to the issue of personal jurisdiction that went before the first judge. We held that the second judge abused his discretion in granting the defendant's motion for summary judgment as there was no record of new evidence having been presented. Accordingly, we concluded that absent new evidence, one judge may not overrule an interlocutory order of another judge of

the same court in the same case. *Reifinger,* 315 Pa.Super. at 151, 461 A.2d at 842.

Moreover, the predecessor judge in *Reifinger, supra,* remained "available" at the time the motion for summary judgment was presented. As noted, the predecessor judge had merely been transferred to another division of the same court and thus it was possible to assign the motion to him for disposition. *Id.* at 153, 461 A.2d at 842–43. I find guidance in this persuasive reasoning and would take this opportunity to clarify the holding of *Reifinger, supra.* While finding an abuse of discretion by the second judge based upon the absence of new evidence, unavailability should be a significant factor in the determination. Unavailability is always an issue when dealing with a successor judge's ruling on a predecessor's interlocutory order. Indeed, the general rule is based upon the presumption that a judge is available to rule on his or her own orders and the logical progression which allows deviation from the rule to permit a second judge to consider new evidence only comes to fruition where the first judge is unavailable. Therefore, rather than characterizing unavailability as an exception to the general rule, I find it is more properly characterized as the threshold question to be determined prior to a determination of the issue of new evidence being presented to successor judges. Applying this reasoning to the instant case, I would find that Judge Avellino's transfer to another division of the same court did not constitute unavailability and, therefore Boyle's alleged new evidence presented to Judge Maier is irrelevant.

The impracticality of mandating that a party pursue a predecessor judge who was merely transferred or no longer assigned to a particular case, but who remains "available" for purposes of ruling on a earlier order, is outweighed by the dangers of judge-shopping and the systematic re-filing of a motion or petition. Such a situation is presented when a party who was unsuccessful before one judge purposefully seeks out or re-files and is later able to convince a second judge on the same court that the relief requested be granted. In *Golden, supra,* the defendants filed preliminary objections to the plain-

tiff's complaint. The objections were denied by the trial judge. The defendant's motion for reconsideration was summarily denied by the same judge. The defendants then presented their motion to a different judge on the same court and the objections were granted and plaintiff's complaint dismissed. There, the record did not reveal whether the second judge was even aware of the first judge's order's denying the relief. Again, we held that the second judge abused his discretion in overruling the first judge, as there was no further development of the facts or positions of the parties between the two decisions and the second judge addressed the same issue that was before the first judge. *Golden*, 410 Pa.Super. at 513, 600 A.2d at 572. This practice cannot be condoned. The existence of alleged new evidence alone cannot serve as incentive for a party to undermine a prior disposition of a predecessor judge when that same judge is available to hear the new evidence.

Adopting the reasoning in *Reifinger, supra*, as a threshold question does not redefine those factors of the unavailability exception enumerated in *Hutchison, supra*, and *Duffy, supra*, but serves to encompass those factors to prevent, once the discovery of new evidence has occurred, the possibility of a judge overruling a colleague's order, and the burden of ruling on an order without knowledge of a full record. Such actions cannot be said to foster finality sought in pretrial orders or insure judicial economy and efficiency, *Hainsey, supra, Hutchison, supra, Salerno, supra, Golden, supra, Vincent, supra, Reifinger, supra*, and are consistent with those cases that hold that the practice of granting a rehearing before a judge other than one who was initially involved in the case is not in the best interest of the parties. *Commonwealth ex rel. Schulberg v. Hirsch*, 236 Pa.Super. 179, 344 A.2d 530 (1975); *Common. ex rel. Gershman v. Gershman*, 181 Pa.Super. 76, 122 A.2d 813 (1956); *Commonwealth ex rel. D'Alfonso v. D'Alfonso*, 181 Pa.Super. 71, 121 A.2d 900 (1956).

I conclude, therefore, that those factors which have previously been categorized as falling into the "unavailability" exception—death, retirement, expiration of judicial commis-

sion, appointment to a higher court, and instantly the transfer of a judge to another division of the same court, while not an exclusive list, must be considered prior to placing new evidence before any judge other than the judge that ruled on the original order. Once satisfied, the presentation of new evidence will be permitted to be placed before a successor judge. This result effectuates the sound policy adopted by our courts to prohibit relitigation of an issue by a judge of co-ordinate jurisdiction, minimizing expense and administrative burden and preventing the rescission of an order of a colleague. *Hainsey, supra; Hutchison, supra; Reifinger, supra; Madden, supra; Marmara, supra.*

Applying this reasoning to the instant case, it is clear to me that Judge Avellino had been transferred to another division of the same court. Thus, for purposes of ruling on his prior interlocutory orders Judge Avellino was not unavailable at the time Judge Maier rescinded the sanction order; new evidence, if any, should have been brought before Judge Avellino. As Judge Avellino was available, I would find that Judge Maier abused his discretion in ruling on the motion. *Reifinger, supra.*

Even had Judge Avellino been "unavailable," I would find it necessary to remand for an evidentiary hearing to determine whether new evidence had been presented. The case law does not establish an inflexible rule defining new evidence but rather demands analysis of a party's contention on a case by case basis. While new evidence may have existed at the time the first order was entered, the only requirement is that this evidence be placed on the record in the interim between the first judge's ruling and the second judge's reassessment. *Hutchison, supra; Gabovitz, supra.* Where a predecessor judge is "unavailable," consistent with the view I advocate, the new evidence must be such as would more likely than not induce the first judge to make the change in the ruling himself or herself. As such, the record here is problematic; a review of the references given by the trial court reveals little, certainly not enough to judiciously determine this matter. Where it is impossible for this court to decide a case because the record is incomplete, the case should be remanded to the trial court

for clarification and completion. *Pawol v. Pawol*, 293 Pa.Super. 29, 437 A.2d 974 (1981); *Dickson v. Lewandowski*, 224 Pa.Super. 285, 307 A.2d 392 (1973).

The record establishes the reasons for Judge Avellino's actions, but we have no guidance as to the basis for Judge Maier's actions other than his notation that he was acting in the "interest of justice." Instantly, Boyle contends that Judge Maier was presented with new evidence as follows:

> Neither Boyle's children nor the decedent were aware that their prior counsel failed to adequately answer Steiman's interrogatories or that an order of preclusion had been entered against them.

> The originals of the documents requested by Steiman were in Steiman's possession at the time of Judge Avellino's order.

> Judge Avellino's order should be rescinded in the interest of justice.

While we are sympathetic to the surprise that may have befallen Boyle upon learning that interrogatories were not fully answered, discovery materials were not given and that a sanction order had been entered, these facts do not establish new evidence. Boyle's prior counsel was given notice of Steiman's sanction requests and Judge Avellino's orders were duly docketed. Boyle's position is no different from that of a party who is precluded from maintaining a suit for damages against a tortfeasor after discovering that his attorney has settled the cause of action on his behalf without consultation. In this situation, the loss should not be borne by an innocent third party who was diligently defending against the suit. If indeed Boyle had no knowledge of the prior attorney's alleged dereliction regarding the interrogatories and material discovery requests, then Boyle's recourse lies in other procedures established in our law to provide recompense and to serve as a deterrent against such conduct. *See Rothman v. Fillette*, 503 Pa. 259, 469 A.2d 543 (1983). Further, as Judge Avellino's sanction order was interlocutory, Boyle always retained the right, upon final disposition, to appeal, as the possibility existed that Judge Avellino abused his discretion in entering

the order. *Daywalt, supra; Atlantic Richfield, supra; Joyce, supra.* For these reasons, overruling Judge Avellino's order in the interest of justice under the instant facts perverts justice by punishing Steiman for his counsel's diligent representation to obtain discovery to defend the suit. Neither contention offered by Boyle establishes that more likely than not, Judge Avellino would have rescinded his order.

Boyle contends that the information which was allegedly the focus of the sanction order, copies of reports and bills, were already in Steiman's possession at the time Judge Avellino entered his order. Steiman denies this. However, while of some import, this does not justify rescission of the order in the instant case. There is no record to determine whether this alleged new evidence would have revealed additional facts, other than those presented before Judge Avellino at the time the sanction order was entered, to suggest that Judge Avellino would have considered the evidence a sufficient basis to overturn his first order. Further, when considering a motion to rescind a predecessor's order, the second judge must consider the substantive nature of the order. Here, Judge Avellino's order was entered *after two previous discovery orders* warning of the possibility of sanctions. Boyle received notice of Steiman's actions and notice of Judge Avellino's orders. Obviously, Boyle refused to comply. Thus, the fact that Steiman may have had actual possession of discovery material does not, in my view, change the substance of the facts before Judge Avellino in entering the sanction order—Boyle's failure to fully answer interrogatories and to participate in discovery.

Allowing a second judge to intervene and overrule a predecessor judge, especially on these facts, undermines the contempt powers of the court and condones deviation from the accepted standards of diligence in initiating and maintaining suit. This is exactly the reason why the motion to rescind the sanction order should have been brought back before Judge Avellino for disposition. Boyle would have suffered no prejudice by allowing Judge Avellino's order to stand until final disposition of trial. Had there been no rescission of Judge Avellino's order by Judge Maier, following trial Boyle could have appealed the order and proved that the answers to

Steiman's discovery requests were sufficient. If proven, the physical evidence barred by Judge Avellino's order would be admissible and Boyle would be entitled to the appropriate relief. I fail to see the propriety of allowing subsequent counsel to seek rescission of an interlocutory order that was entered due to his client's own dereliction and to redirect the intended prejudice and punishment of that order against an innocent party just prior to trial. Such conduct carries the sting of impropriety in that the innocent litigant may be forced to settle at the eleventh hour as the stakes have substantially risen and all prior diligence undertaken in defense of the litigation has been negated. This fact again evidences the importance of having the judge who entered the order determine for himself or herself whether any modification or rescission is appropriate when considering new evidence.

Instantly, the parties acknowledge that Judge Avellino has been merely reassigned to a different division of the same court. Accordingly, he was available for purposes of reconsideration of his order. I would reverse the judgment and reinstate Judge Avellino's sanction order, allowing for reconsideration of the order by presentation of the alleged new evidence to Judge Avellino. Alternatively, I would find that Steiman is entitled to a new trial, precluding all evidence that is the subject of Judge Avellino's order.