J-A05032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF FRED GITTERMAN, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ESTATE OF FRED GITTERMAN, DECEASED | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1647 EDA 2023 |

Appeal from the Decree Entered June 5, 2023
In the Court of Common Pleas of Delaware County Orphans' Court at
No(s):  0286-2018-O

BEFORE:  DUBOW, J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                     **FILED APRIL 3, 2024**

The Estate of Fred Gitterman, deceased ("the Estate"), appeals from the decree which distributed the balance of the Estate to Heidi Gitterman ("Gitterman") and Francine Smolen ("Smolen").  We affirm.

The orphans' court summarized the relevant factual and procedural history as follows:

> Frederick ["]Fred["] Gitterman (["]decedent["]) was tragically killed in a hit and run accident in . . . March . . . 2018. Earlier in his life, decedent met  . . . Gitterman, at [college] where they began dating, and . . . married in . . . 1970. . . .  In 1980, decedent and . . . Gitterman divorced, although they maintained a caring relationship.
>
> Unfortunately, decedent[, an attorney,] eventually lost his law license, and in around 2012, was in dire need of financial assistance.  Starting [i]n October . . . 2012, . . . Gitterman began lending money to decedent for his food, hotel rooms, and payment of his bills.  . . . [Gitterman's sister,] Smolen[,] began lending decedent funds for basic food and lodging starting in 2014, when she learned from her sister of decedent's financial situation.

Decedent was very specific in his written communications with the two sisters in stating exactly the amounts that he believed he owed each of them, and he would provide time ranges in which he believed he would be able to make repayments. . . . Gitterman carefully tracked the funds being loaned to decedent in a document she titled "Loans to Freddy 2012 – 2017." . . . Smolen kept a chronology of the money that she loaned decedent in the form of a spreadsheet. Communications between decedent and . . . Gitterman[,] and decedent and . . . Smolen[,] reflected that the payments being made for decedent's expenses were in the form of a loan. In return, decedent kept . . . Gitterman and . . . Smolen informed as to potential career opportunities and his financial abilities. Decedent acknowledged the specific loan amounts owed to [Gitterman and Smolen] in emails dated February 22, 2016, November 4, 2016, and October 22, 2017.

. . . Gitterman testified that throughout the time that she was lending decedent money, she was aware that he was attempting to obtain funds and he was acknowledging what amounts she loaned him. She testified that there are letters, e[]mails, text messages, and phone calls discussing the debt, the importance of paying the debt, and decedent's agreement to repaying it. . . . Gitterman testified that she knew decedent was getting healthier and had confidence that he was going to make repayment. . . . Gitterman testified that she had specific knowledge of decedent's communications with extremely prominent businessmen. . . .

The discussions between . . . Smolen and decedent were clear that [her] payments to decedent were in the form of a loan. . . . Smolen testified that decedent would often confirm how much money was owed to . . . Smolen, and decedent would indicate that he would be repaying with interest. . . . Smolen testified that her understanding of the loan agreement was that when decedent had the money, or some money, he would make repayment. She testified that she expected that at some point, he would have the money. She testified that "there were so many ways that he was looking into making money." . . . Smolen testified that she was aware of his pursuit of many business ventures and his work as a paralegal to attempt to bring himself into good standing as an attorney. . . .

Orphans' Court Opinion, 9/28/23, at 3-6 (citations to the record and unnecessary capitalization omitted).

Shortly after decedent's death, Laurence M. Cramer, Esquire ("Attorney Cramer") filed a petition for the grant of letters of administration, averring that decedent died intestate and that his sister, Sue Ellen Reinish ("Reinish") was his sole surviving heir. Attorney Cramer was thereafter appointed as the Administrator of the Estate.

Gitterman subsequently produced a copy of a handwritten will executed by decedent in 2013 in which he left his entire estate to her and named her as executrix. Gitterman renounced her position as executrix, and instead appointed Howard L. Gleit, Esquire ("Attorney Gleit") as executor. The Register of Wills accepted the copy of the 2013 will for probate, revoked the letters of administration issued to Attorney Cramer, and granted letters of administration to Attorney Gleit. Following a *de novo* appeal to the orphans' court, the court issued a decree removing the copy of the 2013 will from probate and setting aside the letters of administration issued to Attorney Gleit. This Court affirmed the orphans' court decree. *See In re Estate of Gitterman*, 793 EDA 2020 (Pa. Super. 2021) (unpublished memorandum) (affirming the orphans' court's determination that, because the original 2013 will was never found, a presumption arose that decedent revoked or destroyed it, and Gitterman failed to rebut this presumption with clear, direct, weighty and convincing evidence).

- 3 -

In April 2020, while the prior appeal was pending, Gitterman and Smolen executed notices of claims against the Estate. Gitterman's claim was for the amount of $120,340.59, which included the accumulated loan amounts of $81,258.83, plus six percent statutory interest.[1] Smolen's claim was for the amount of $44,405, which included the accumulated loan amounts of $25,308.64, plus six percent statutory interest.[2]

Meanwhile, the Estate initiated a lawsuit against the driver who struck decedent and recovered $225,000 in settlement of a wrongful death claim. The Estate did not provide notice of the settlement to Gitterman or Smolen, despite the fact that they had filed notices of claims against the Estate.

Gitterman and Smolen filed a petition to compel the filing of an accounting of the Estate. The Estate filed a petition for adjudication as well as a proposed distribution and accounting, which advocated that the balance of the Estate, consisting of $82,092.30, be distributed to Reinish. Gitterman and Smolen filed objections to the proposed accounting. The parties conducted videotaped depositions of Gitterman and Smolen. The sisters each alleged that they made loans to decedent from 2012 through 2018 pursuant to an oral agreement that decedent would repay them when he returned to

---

[1] Gitterman filed an additional notice of claim for the monetary gifts that decedent promised to give her in the amount of $111,500.

[2] Smolen filed an additional notice of claim for the monetary gifts that decedent promised to give her in the amount of $37,500.

work or when funds would be available to him. The matter proceeded to a trial in April 2023, at which the videotaped depositions of Gitterman and Smolen were admitted into evidence. On June 5, 2023, the orphans' court entered a decree which adopted the proposed findings of fact and conclusions of law submitted by Gitterman and Smolen, sustained their objections to the accounting, and directed that the balance of the Estate be distributed to them.

The Estate timely appealed, and both the Estate and the orphans' court complied with Pa.R.A.P. 1925.[3]

The Estate raises the following issues for our review:

1. Did the [orphans'] court commit reversible error in finding that there was a valid and enforceable loan agreement when all the evidence indicated that the parties never behaved as though a loan agreement existed and the conduct of the parties was consistent with a gift to [decedent] that [he] had a choice to repay at his own discretion?

2. In the alternative, assuming this Court determines the [orphans'] court did not abuse its discretion in finding a valid loan agreement, did the [orphans'] court commit reversible error in ignoring the statute of limitations and ordering the [E]state . . . to repay money that was given to [decedent] more than four (4) years prior to any claims being made?

Estate's Brief at 4 (unnecessary capitalization omitted).

Our standard of review of an orphans' court decree is well-settled:

_____

[3] The Estate filed a four-page concise statement which raised twelve issues. The orphans' court determined that the Estate's issues on appeal were waived for lack of concision, clarity, and specificity. **See** Orphans' Court Opinion, 9/28/23, at 9-11. Nevertheless, the orphans' court authored an opinion addressing the issues. We decline to find waiver, and will instead address the merits of the issues presented for our review.

> When reviewing a decree entered by the orphans' court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*Estate of Fuller*, 87 A.3d 330, 333 (Pa. Super. 2014) (citation and unnecessary capitalization omitted).

In its first issue, the Estate contends that the orphans' court erred in finding the existence of a valid and enforceable loan agreement. Under Pennsylvania law, the elements of an enforceable contract are an offer, acceptance, consideration, and mutual meeting of the minds. *See Chilutti v. Uber Technologies, Inc.*, 300 A.3d 430, 443 (Pa. Super. 2023) (*en banc*) (citation and internal quotation marks omitted). "An agreement is an enforceable contract wherein the parties intended to conclude a binding agreement and the essential terms of that agreement are certain enough to provide the basis for providing an appropriate remedy." *United Envtl. Grp., Inc. v. GKK McKnight, LP*, 176 A.3d 946, 963 (Pa. Super. 2017) (citation omitted).

Additionally, there must be a "meeting of the minds" for an agreement to exist. *See Accu-Weather, Inc. v. Thomas Broadcasting Co.*, 625 A.2d 75, 78 (Pa. Super. 1993). As this Court has explained:

> [T]he very essence of an agreement is that the parties

mutually assent to the same thing . . . . Without such assent there can be no [enforceable] agreement . . . .. The principle that a contract is not binding unless there is an offer and an acceptance is to ensure that there will be mutual assent . . . .

*Id*. (citation omitted).

The burden of proving an oral contract is on the party seeking to establish it. *See Boyle v. Steiman*, 631 A.2d 1025, 1033 (Pa. Super. 1993). When construing an oral contract, the words constituting the agreement are merely parts of and imbedded in a general conversation, and the meaning must be interpreted with reference to the circumstances under which the parties contracted in light of the objectives to be accomplished. *Id.* In cases involving contracts wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to surrounding circumstances and course of dealing between the parties in order to ascertain their intent. *Id*.

"[I]n the case of a disputed oral contract, what was said and done by the parties as well as what was intended by what was said and done by them are questions of fact for the [fact finder]." *United Envtl. Grp., Inc.*, 176 A.3d at 963 (citation omitted). This Court is bound by the trial court's credibility determinations. *See Keystone Dedicated Logistics, Inc. v. JGB Enters.*, 77 A.3d 1, 6 (Pa. Super. 2013). However, the question of whether an undisputed set of facts establishes a contract is a matter of law. *See United Envtl. Grp., Inc.*, 176 A.3d at 963. Consequently, our standard of review over questions of law is *de novo* and to the extent necessary, the scope

of our review is plenary. *See Keystone Dedicated Logistics, Inc.*, 77 A.3d at 6.

The Estate contends that the orphans' court erred in determining that Gitterman and Smolen were creditors of the Estate because there was no valid loan agreement between the decedent and either Gitterman or Smolen. The Estate claims that none of the essential elements of a contract were present in the communications between the parties. In particular, the Estate asserts that there was no consideration, no essential terms, and no mutual agreement, noting that there was no discussion of any remedy if decedent failed to make repayment, and no written agreement establishing a default provision.

The Estate concedes that the decedent sent emails in which he acknowledged the money he received from Gitterman and Smolen and that he promised to repay the amounts he received from them with interest and additional gift money. However, the Estate nevertheless argues that decedent's acknowledgement of the money he received and his promises to make repayment were insufficient to establish a contract. The Estate asserts the absence of any discussion between the parties regarding an interest rate on the alleged loans confirms that there was no mutual consideration between the parties. According to the Estate, any moral satisfaction that Gitterman and Smolen experienced is not valid consideration. The Estate claims that, because decedent had no assets and was not working over the course of the

six years in which the payments were made, Gitterman and Smolen had no reasonable basis to believe that decedent would ever repay them. The Estate insists that the fact that Gitterman and Smolen never intended to take any legal action against decedent establishes that they did not intend for the payments to be a legally enforceable loan agreement. Instead, the Estate argues, the transactions at issue were simply gifts made of love and care, with no expectation of repayment.

The orphans' court considered the Estate's first issue and concluded that it lacked merit. The court reasoned:

> Decdent and [Gitterman and Smolen] clearly formed a valid oral agreement enforceable under Pennsylvania law. Said oral agreement was in the form of a demand loan. [Gitterman and Smolen] and decedent agreed that [Gitterman and Smolen] would lend decedent funds for his basic needs, *ie*. food and shelter. This is corroborated by [Gitterman and Smolen's] bookkeeping of said loans and decedent's emails to [them] characterizing the funds as loans. The evidence presented makes it clear that decedent in fact intended to repay [Gitterman and Smolen] and went so far as keeping them apprised of his financial status and reassuring them that he would make repayment when he was able. [Gitterman and Smolen's] testimony confirms this was their understanding of the loan agreement and conditions of repayment. Decedent's ability to return to work and/or have available funds was the condition precedent for repayment. The writings corroborate the testimony presented and the parties' understandings of the agreement.
>
> * * * *
>
> The conduct and course of dealing between the parties from 2012 up until decedent's death in late 2018 clearly established that decedent formed a valid and enforceable oral contract between himself and . . . Gitterman and . . . Smolen. As mentioned above, . . . Gitterman kept a log of the finances she was loaning to decedent and titled said log as "Loans to Freddy

- 9 -

2012 – 2017." . . . Smolen also kept a log of the finances she was loaning decedent.

As reflected in [the accounts] and corroborated by [the correspondence], [Gitterman and Smolen] and decedent acknowledged that these funds were in fact a loan and not a gift. In fact, it is clear in reviewing the communications between the parties that when they intended for a payment to be a gift rather than a loan, it was specifically stated as such. At times when decedent believed that he would be in a position in the near future to make repayment, he requested both . . . Gitterman and . . . Smolen's bank account information in order for him to be able to wire funds for repayment to [them]. This is a clear and unequivocal acknowledgment of the debt and promise to repay said debt. . . . [Gitterman and Smolen] and decedent had a mutual understanding of the oral agreement in the form of a demand loan, and the terms of the enforceable contract were clearly set out between the parties.

* * * *

Both . . . Gitterman and . . . Smolen had an understanding that they would be repaid gift money in addition to the principal loans they made to decedent. During her deposition testimony, . . . Smolen acknowledged that decedent promised repayment to her by repaying "the base of the principal loan that [she made], plus a gift in lieu of interest." During her deposition testimony, . . . Gitterman stated that decedent "express[ed] his appreciation and he wanted to give some gift money that included the interest. It would be over and above the interest." She further stated that decedent promised to "pay back with interest and gift money."

These assertions made by decedent and agreed upon by [Gitterman and Smolen] clearly establishes a benefit to the promisor in return for [Gitterman and Smolen's] loans made to decedent. Therefore, there was consideration in exchange for the loans being made to decedent

* * * *

The abundance of evidence presented by [Gitterman and Smolen] clearly reflects that a valid and enforceable agreement was entered into by the parties. Regardless of whether [Gitterman and Smolen] contemplated legal action for decedent's

lack of repayment is of no moment. Clearly, [Gitterman and Smolen] were aware, as they were being kept updated by decedent regularly, that [he] did not have the necessary funds to make repayment. However, [Gitterman and Smolen] kept accurate records of the loans being made and worked with decedent in attempting to have repayment accomplished when decedent made promises to pay.

Default provisions are not a legal requirement in order to determine [that] a contract [is] legal and enforceable. . . .

. . . The various emails between decedent and [Gitterman and Smolen] confirm recognition of the loans and the intention that they be loans. Decedent expressly promised to repay the loans in his communications with [Gitterman and Smolen]. While it is acknowledged that decedent did not repay either [Gitterman and Smolen], the condition precedent to him doing so was that he would become re-employed and financially stable. . . . Unfortunately, it was not until decedent's death that he had funds that could be used to repay his loans.

Orphans' Court Opinion, 9/28/23, at 12-16, 18-19, 20-21 (citations to the record and unnecessary capitalization omitted).

Based on our review of the record, we conclude that the orphans' court's determination is supported by the record and free of error. The evidence presented by Gitterman and Smolen was more than sufficient to meet their burden of proving the existence of an oral loan contract between Gitterman and decedent and Smolen and decedent. *See Boyle*, 631 A.2d at 1033. The orphans' court credited the testimony and documentary evidence presented by Gitterman and Smolen reflecting that decedent regarded the payments as loans. Indeed, the decedent repeatedly acknowledged via email his receipt of payments from Gitterman and Smolen, as well as his intention to repay them in full for those payments, and to pay interest on those amounts as well as an

additional monetary gift as soon as he was able to do so. That the parties did not discuss a specific interest rate or the imposition of penalties does not alter the clear contractual nature of their transactions. Nor does the fact that decedent continued to experience financial hardship and was unable to make any payments to either Gitterman or Smolen prior to his death detract from the clear intention and agreement of the parties to regard the payments as loans. Consequently, we conclude that the evidence establishes that there was an offer, acceptance, consideration, mutual understanding, and sufficiently clear terms to provide the basis for an appropriate remedy. **See United Envtl. Grp., Inc.**, 176 A.3d at 963. Accordingly, the Estate's first issue merits no relief.

In its second issue, the Estate contends that the claims for repayment asserted by Gitterman and Smolen are barred by the statute of limitations. Because the applicability of a statute of limitations is a question of law, our scope of review is plenary and our standard of review is *de novo.* **See Ash v. Continental Ins. Co.**, 932 A.2d 877, 879-80 (Pa. 2007). Statutes of limitations are rules of law that set time limits for bringing legal claims. **See DiDomizio v. Jefferson Pulmonary Assocs.**, 280 A.3d 1039, 1046 (Pa. Super. 2022). Relevantly, the statute of limitations for an action upon an express contract not founded upon an instrument in writing is four years. **See** 42 Pa.C.S.A. § 5525(a)(3).

However, the statute of limitations may be tolled if the contract contains a condition precedent, such as an act or event which triggers the duty to perform on the contract. *See Gurenlian v. Gurenlian*, 595 A.2d 145, 150 (Pa. Super. 1991). "[W]here the contract is to pay on the future performance of a condition . . . or at a certain time after demand, there a demand is necessary to a right of action and the statute of limitations does not begin running until a demand is made." *Id*. (citation and internal quotation marks omitted). However, where there is no evidence or testimony in the record indicating that repayment was conditioned on the occurrence of a condition precedent or of a demand of repayment, the running of the statute of limitations is not contingent on a demand being made and, therefore, the statute is not tolled. *See id*.

The Estate argues that, if the payments are characterized as loans, then any claim for repayment of those loans is barred by the four-year statute of limitations. According to the Estate, most of the loans were made to decedent prior to April 1, 2016. The Estate asserts that, because Gitterman and Smolen did not file their notices of claims against the Estate until April 1, 2020, most of their claims for repayment are time-barred. The Estate additionally argues that, because the parties did not expressly condition decedent's repayment on any occurrence or the making of a demand by Gitterman and Smolen, they were required to commence an action against decedent for breach of the loan

contract within four years of each and every payment that they made to decedent.

The orphans' court considered the Estate's second issue and determined that it lacked merit. The court reasoned:

> . . . The oral loan herein is clearly a demand loan, as [Gitterman and Smolen] could demand repayment of their loan at such time as a condition precedent, or contingency was met. Pursuant to [Gitterman and Smolen's] testimony, there was no specific date for repayment to be made. Further, April [1], 2020 was the first time that [Gitterman and Smolen] made a demand for repayment of the loans. The oral loans were demand loans where decedent would be required to make repayment upon demand by [Gitterman and Smolen] when he obtained the funds to be able to make repayment. Pursuant to the statute, the statute of limitations required that the tolling of this action be accomplished within four years of the making of a demand for repayment.
>
> * * * *
>
> . . . [I]n the instant matter, the oral agreement contained a clear condition precedent to decedent's repayment, which has been reflected by the voluminous amount of evidence presented. Decedent was to gain employment and a sound financial status and then [Gitterman and Smolen] would demand repayment. [Gitterman and Smolen] reasonably expected to be repaid and relied on decedent's assertions that he would ultimately be in a position to repay them, as he was experienced in the area of law and made [Gitterman and Smolen] aware of specific projects he was purs[u]ing, as well as potential reimbursements for work to be performed. The contingency was never fulfilled during decedent's lifetime and was only fulfilled following his death, due to lawsuit proceeds being available in 2022.
>
> In the instant case, a demand was necessary for the statute of limitations to begin running. . . . [T]here is an abundance of evidence in the record which indicates that payment was contingent on the occurrence of a condition precedent. Further, decedent provided [Gitterman and Smolen] with continuous updates as to his financial opportunities and status, confirming his

current inability to repay the debt but reassuring [Gitterman and Smolen] that he was seeking opportunities to be able to repay the outstanding debt. The condition of repayment was that . . . Gitterman and . . . Smolen would demand repayment from decedent when he would become re-employed and get back on his feet financially.

Orphans' Court Opinion, 9/28/23, at 22-24 (citations to the record and unnecessary capitalization omitted).

We discern no error in the orphans' court's application of the statute of limitations to the instant case. Gitterman and Smolen both testified that decedent's repayment of the loans was contingent upon his ability to earn enough money to repay them or otherwise have sufficient funds to repay them. That condition precedent never occurred in decedent's lifetime. When the Estate obtained the settlement proceeds in the personal injury action, the condition precedent was met. Gitterman and Smolen then filed their notices of claims against the Estate, and thereby asserted their demands for repayment upon the first sign of an ability to pay. As those demands were made within the applicable four-year statute of limitations, the orphans' court did not err in determining that the demands were not barred by section 5525(3). Accordingly, the Estate's second issue merits no relief.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  4/03/2024